# Wills *v.* The State.

74  21
95   8

*Indictment for Murder.*

1. *Impeaching witness by proof of former statements.*—When it is sought to impeach a witness by showing discrepancies between his testimony and his former statements on the preliminary investigation before a committing magistrate, which were reduced to writing by the magistrate, and, for this purpose, he is cross-examined as to such former statements, it is not proper to read detached portions of them, and ask the witness if he did not so testify, but his entire testimony should be shown or read to him.

2. *Same.*—The witness having been cross-examined as to his former statements, with a view of impeaching him, his entire testimony on that examination may be read to the jury in rebuttal; not as original evidence, but only for the purpose of enabling the jury to compare the two statements, and see how far they are consistent or inconsistent with each other.

3. *Evidence admissible for one purpose only; explanatory charge.* When evidence is admitted which is competent for one purpose, if the party against whom it is admitted fears injury from its consideration for any other purpose, he should ask a charge limiting its operation.

4. *Dying declarations.*—Dying declarations are admissible as evidence, when made under a sense of impending dissolution, although the declarant may have never expressed the conviction that he must die.

5. *Homicide with deadly weapon, by blow voluntarily given, but not aimed at person killed.*—If a blow be voluntarily or intentionally given with a deadly weapon, not in self-defense, nor under other legal excuse, and death result from the blow, "the offense can not be less than manslaughter in the first degree, and may be murder," even though the blow was not aimed at the person who was killed.

6. *Charge requiring explanation.*—A charge asked which, without explanation, tends to confuse or mislead the jury, is properly refused.

FROM the Circuit Court of Talladega.
Tried before the Hon. LEROY F. BOX.

The indictment in this case charged, in a single count, that Randall Wills and Jane Wills, "unlawfully and with malice aforethought, killed Lucy Coleman by shooting her with a pistol." The defendants were jointly tried, and each pleaded not guilty; and by the verdict of the jury, Randall Wills was convicted of manslaughter in the first degree, and sentenced to the penitentiary for four years, while Jane Wills was acquitted. It appeared from the testimony adduced on the trial, that the defendants were living together as husband and wife, and the deceased was the wife of Jess. Coleman; that the parties were all colored persons, lived in the same inclosure, but in two different houses, and cultivated different patches of cotton in the same field; that the parties had an altercation one evening in September, 1881, which was caused by Jane Wills turning Coleman's calf out of the field, and resulted in the shooting of both Lucy and Jess. Coleman by a pistol in the hands of Randall. Only the four persons named were present at the shooting, and Jess. Coleman, a witness for the State, thus testified in reference to it: "Lucy and I were in the field picking cotton, after dinner, September 27, 1881, and started to hunt our calf that had been turned out. When we got to the top of the hill coming towards our house, we saw Randall and Jane picking cotton in their patch. I called to Jane, and asked her if she had turned my calf out. She answered, '*Yes, you son of a b—, I did turn it out.*' I then told her, '*It was a mean trick,*' and then heard Randall say, '*Hush, Jane.*' This was all that was said there, and Lucy and I went on towards the house. Randall went to his house, and got a pistol, and came back, and met me in the road, and shot me. After he fired the first shot, he *hollered* to Jane to catch and hold me—that *G— d— me, he was going to kill me.* I then struck him on the head with a rock, and he then fired the second shot, which struck my wife. He fired four shots in all; the first struck me in the side, the second struck my wife, and the other two struck me on the arm and hand."

Dr. Donaldson, a practicing physician, was examined as a witness for the State, and thus testified: "I saw Lucy Coleman late in the afternoon of the day she was shot, and examined her. She was shot in the abdomen, and died the next day from the effects of the shot. I told her that she could not recover, and that she had better arrange such things as she wished to arrange as soon as possible, as she could not live long. She made no reply to me. A good many persons were present, and among them Squire E. C. Turner, who was near her bed when I told her she could not get well." Said Turner afterwards testified as follows: "I was a justice of the peace in said county in September, 1881, and am now; and in that capacity I went to

see Lucy Coleman after she was shot. Dr. Donaldson and others were there. I did not hear all that he said to Lucy, but, after stating to her that Dr. Donaldson said she could not live, I examined her on oath about the difficulty; and what she said was reduced to writing in her presence, under my directions, by Mr. Burns." The written statement being produced, and identified by the witness, "the State offered the following portions of said statement, as the dying declarations of the deceased: '*As Jess. Coleman, my husband, and myself were returning from the cotton-patch, he commenced firing on Jess. and me, and at the same time cursing us. I walked some distance, and fell from the effects of the pistol shot.*' The defendant objected to this testimony, on the ground that no sufficient predicate for its introduction had been offered; but the court overruled the objection, and the defendant excepted." This was all the evidence offered in relation to the dying declarations of the deceased.

Jane Wills was arrested the day after the shooting, but Randall was not arrested for several days afterwards. On the preliminary investigation of the charge against Jane, before said E. C. Turner as a justice of the peace, the witnesses for the prosecution were examined, and their testimony was reduced to writing by the magistrate, or under his directions, and was sworn to and subscribed by the several witnesses. When these witnesses were examined on the trial, the defendant sought to impeach their testimony, by showing discrepancies between it and their former statements on the preliminary investigation; and he reserved several exceptions to the rulings of the court in reference to this evidence. The substance of these rulings is stated in the opinion of the court.

The defendant requested the following charges, each of which was in writing, and was refused by the court: 1. "Manslaughter in the first degree is not merely the voluntary or intentional killing of a human being, but is the unlawful and intentional killing of a human being; and unless the evidence shows, beyond all reasonable doubt, that the defendant unlawfully and intentionally killed Lucy Coleman, the jury can not convict him of that offense." 2. "Unless the jury find from the evidence, beyond all reasonable doubt, that the defendant voluntarily and intentionally took the life of Lucy Coleman, they must acquit him." 3. "If the defendant went to his house, and got his pistol, and returned with it, to protect his wife from Coleman; and that then he, not being in fault, was assaulted by Coleman with a rock, and struck on the head; and if then, to save himself or his wife from great bodily harm, he fired the pistol at Jess. Coleman, and accidentally struck and killed Lucy Coleman, he is not guilty of any offense." 4. "Even though the

[Wills v. The State.]

defendant may have intended to kill Jess. Coleman, if ·he, in attempting to do this, accidentally killed Lucy Coleman, he can not be convicted of voluntarily killing Lucy Coleman, and is not guilty of manslaughter in the first degree, unless he would have been guilty of the same offense if Jess. Coleman had been shot." The defendant duly excepted to the refusal of these charges, and also to the following charge, which was given at the instance of the prosecuting officer: "Whether or not there is evidence showing a case of self-defense, or a case of killing under a sufficient provocation to justify it, the jury must determine from all the evidence; and if the jury find that Randall did not shoot in self-defense, but got his pistol for the purpose of killing Jess. Coleman or his wife, and advanced on them, and shot at either of them with intent to kill, and actually did kill Lucy Coleman, then the jury must find the defendant guilty of manslaughter in the first degree, if the killing was in this county, and before the finding of this indictment; and if the evidence shows circumstances of aggravation, the jury may, in their discretion, sentence the defendant to ten years imprisonment in the penitentiary."

All these rulings of the court are now relied on as error.

PARSONS & PARSONS, for appellant.

H. C. TOMPKINS, Attorney-General, with HEFLIN, BOWDON & KNOX, *contra*.

STONE, J.—In the cross-examination of witnesses for the prosecution, the defense sought to impeach them, by introducing their written testimony taken down when they were examined as witnesses on the committing trial of Jane Wills, who was charged with participation in the homicide, for which her husband, Randall Wills, was on trial. In each examination, the testimony related to one and the same altercation; and the testimony on the committing trial of Jane was sworn to and subscribed by the respective witnesses. Counsel for the defense read to witnesses detached sentences of said written testimony, and asked them if they had not so testified on the committing trial. On objection and motion by counsel for the prosecution, the court ruled that the entire affidavits, or sworn testimony, should be shown, or, rather, read to the witnesses (they could not read), before the latter should be required to answer. In this the Circuit Court conformed to what we consider the true and sound rule on the subject. "A witness is not bound to answer as to matters reduced to writing by himself or another, and subscribed by him, until after the writing has been produced and read or shown to him."—*Newcomb v. Griswold*, 24 N. Y.

[Wills v. The State.]

29; *Bellinger v. People*, 8 Wend. 595; *Stephens v. People*, 19 N. Y. 549; *Morrison v. Myers*, 11 Iowa, 538; *Callahan v. Shaw*, 24 Iowa, 441; *Stamper v. Griffin*, 12 Georgia, 450; 1 Whar. Ev. § 68, and notes; 1 Greenl. Ev. § 463.

After the witnesses had been cross-examined as to the contents of the sworn testimony, with a view of showing discrepancy between it and the testimony then being given, there was no error in permitting the prosecuting attorney to read to the jury the entire written testimony of the witnesses, thus attempted to be discredited. It was but just that the whole connected statement should go before the jury, to enable that body to institute a comparison between the two statements. It was competent for no other purpose. If the defendant apprehended the jury would treat the affidavits as original and general evidence in the case, that was a subject for a charge, limiting its operation. To put the court in error, such charge must have been requested and refused.—1 Brick. Digest, 809, § 87; *Ib.* 810, § 98.

There is nothing in the other points raised as to the admissibility of evidence. The dying declarations of the deceased were clearly admissible.—*Kilgore v. The State*, at present term. The pre-requisite is, that they shall be made under a sense of impending dissolution. When this is shown, the testimony is properly admitted, although the declarant may never have expressed the conviction that he or she must die.

Charges 1 and 2 asked by defendant were rightly refused. If a blow be intentionally or voluntarily given, with a deadly weapon, and not in self-defense, or under other legal excuse, and the result be the death of a human being, even though not the person aimed at, this can not be less than manslaughter in the first degree, and may be murder. The depraved heart, or unlawful will, with which the instrument of death is hurled at one, accompanies and characterizes the fatal blow, which falls on another by misadventure.—Code of 1876, §§ 4295, 4300; *McManus v. The State*, 36 Ala. 285; *Judge v. The State*, 58 Ala. 406.

Charge 3 was rightly refused, because the record contains no evidence, either that defendant's wife needed protection from Coleman, or that defendant apprehended there was such need.

Charge No. 4 would assert a correct legal proposition, if the words, "*he can not be convicted of voluntarily killing Lucy Coleman*," had been omitted. We have shown above that a specific intention to kill Lucy Coleman, was not necessary to defendant's conviction of manslaughter in the first degree. The words copied and italicized above would tend at least to confuse and mislead the jury, and for that reason the charge was rightly

[Jackson v. The State.]

refused.—*Bay Shore R. R. v. Harris*, 67 Ala. 6; *Kirkland v. Trott*, 66 Ala. 417.

The charge given at the instance of the prosecution is free from error.

Let the judgment of the Circuit Court be affirmed, and the sentence of the law be executed.