172 So. 675

## STEWART v. STATE.

### 4 Div. 277.

Court of Appeals of Alabama.

Dec. 15, 1936.

Rehearing Denied Jan. 12, 1937.

316

Winn & Winn, of Clayton, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case charged the appellant (defendant below) with the offense of rape. There was but one count in the indictment.

This is the second appeal in this case. 26 Ala.App. 392, 161 So. 112, 114. In the former opinion supra, this court properly held, "It was within the province of the court to permit the solicitor to ask leading questions of the witness Susie Emma Turner."

By the foregoing pronouncement, this court did not mean to imply, nor did this court have the authority to hold, that questions to a witness seeking an answer as to the legal effect of a transaction was permissible; for no witness be he expert or nonexpert is allowed to testify as to the legal effect of a transaction. State v. Cassill, 71 Mont. 274, 229 P. 716; Wheeler v. State, 42 Md. 563; State v. Gibson, 83 S.C. 34, 64 S.E. 607, 916; 22 Corpus Juris 637; Love v. Lee, 199 Ala. 676, 75 So. 24; O'Rear v. Richardson, 17 Ala.App. 87, 81 So. 865; Pilcher v. State, 16 Ala.App. 237, 77 So. 75.

In 22 C.J. 637, supra, it is said: "The existence of a particular legal status cannot be stated as the conclusion of the witness, nor can a witness be permitted to state the legal result of a transaction or series of transactions, or in any other way to apply a legal standard to the inferences from facts, mental or physical, unless the objection is waived."

Nor are witnesses allowed to testify to their opinions or conclusions on material matters. The general rule requires that a witness must state facts within their knowledge relevant to the issue, as it is the province of the jury solely to draw deductions and conclusions from the pertinent facts in evidence and to decide matters directly in issue. Prince v. State, 215 Ala. 276, 110 So. 407; De-

loney v. State, 225 Ala. 65, 142 So. 432; Thornton v. State, 21 Ala.App. 323, 108 So. 80.

On the second trial of the instant case, in the court below, from the judgment of conviction in which this appeal was taken, we find numerous instances where the foregoing rule was impinged and flagrantly violated.

The record shows that the alleged injured party, Susie Emma Turner, when testifying, was allowed, over the strenuous and insistent objections and exceptions, to testify in response to direct questions of the solicitor that this appellant raped her. Some of the questions, on direct examination, were as follows:

"Q. I'll ask you this, Susie Emma, did Mack Stewart rape you? A. Yes sir.

"Q. Where did the raping take place? A. Up the road."

Again, "Q. Where did that take place Susie Emma? A. Up the road. * * *

"Q. Just tell the jury about it, how he did it. A. He just throwed me down and raped me.

"Q. Well, just tell the jury what he did to you. A. He just grabbed me and throwed me down and raped me.'

"Q. Tell me what he did to you. A. He throwed me down and raped me."

And to the State's witness Emma Turner, mother of Susie Emma, the solicitor was likewise permitted, over objection and exception, to propound to her this question "Q. Did you see her on that day before she was raped?" There were other questions and answers of like import during the examination of the witnesses by the State, and, as stated in each instance, objections were interposed, and overruled by the court, to which action in each instance the defendant duly reserved an exception.

Under the rule above stated, there was error in these rulings. The record shows that at the time of this trial the defendant, a negro boy, was eighteen years of age, and Susie Emma Turner, the alleged injured party a negro girl, was fifteen years of age, making them respectively seventeen and fourteen years of age at the time of the alleged commission of the offense. The defendant did not deny having sexual intercourse with the girl at the time and place complained of, but strenuously denied that he used any force or threats, etc., in so doing. The girl herself testified, as shown by the record,

that she saw the defendant that morning pass her house in a wagon with his father and Curl Stewart, his brother, going in a direction away from their home; that in the afternoon, when the sun was about one-half hour high, she was in the house and heard a wagon coming, that she went to the door and looked out, and there was no one in the wagon but Mack (defendant) and his brother Curl Stewart; that her mother had told her to go get the cow which was staked out some distance from her home near the road and in the direction the wagon was traveling; that she went out in the road and in the same direction the wagon was going to get the cow. That the defendant was with his brother in the front part of the wagon; "At that time no one was in the house but myself and my mother, preacher H. C. Jones had been there but he had gone and was out of sight when I saw the wagon; do not know how long the preacher had been gone, my judgment is that it was about ten minutes; he lived about half mile from me; he went up the road towards his home, not towards White Oak; Mack, the defendant, was not sitting in front of wagon leaning back on oat sacks; and I did not call him 'Mack, Mack!' I did not call him neither did I motion to him; he did not step off the wagon; the wagon did not stop. I did not catch Mack by the hand and go down the road with him holding hands and on together to where the cow was staked out. The cow was staked out about as far from the road as to that second post. I have been knowing Mack about three years, I think." On her direct examination she had testified: "The wagon was going up the road. After he saw me he got off the wagon and went on up the road with me, and when we got to the cow he told me to lay down and I told him I wasn't and I started taking the cow loose and he told me not to do that he kept telling me to lay down and I told him I wasn't going to do it, and he taken me and throwed me down." On cross-examination, in response to the question, "If you had anything to do with this boy on that particular occasion, why, say so, and if you didn't say so. Now did not you have something to do with him?" She replied, "Yes." "I did say we did go over beyond the cow, sort of down in the bushes; we stayed down there in the bushes ten or fifteen minutes then I came up there to get the cow; no he did not help me unloose the cow. When

318

we went out beyond the cow there, and stayed ten or fifteen minutes, me and Mack were talking all the time. I was telling him to let me alone.' I tried to shove him off. I did not holler; I could not holler."

The testimony of the defendant and his brother as to the foregoing was in sharp conflict with that above quoted. In substance, they testified that when the wagon upon which they were traveling passed the home of the prosecutrix she ran out in the road and called Mack (defendant) several times, and that when he got off the wagon she joined him and went holding hands to the place where the admitted intercourse between the parties occurred. And the defendant testified, in effect, that all that was done between them was with the full consent of the alleged injured party.

 The offense charged in this case, as stated, was rape, and such charge is a distinct offense from that of having carnal knowledge of a girl under the prohibited age, although of a kindred nature. Toulet v. State, 100 Ala. 72, 74, 14 So. 403, and cases cited. To constitute the offense of rape, force is an essential ingredient. In other words, rape is the unlawful carnal knowledge of a woman by a man forcibly and against her will.

Under the conflicting evidence in this case, it devolved upon the jury to determine whether or not the offense had been committed as charged. It was not within the province of the witnesses nor the solicitor to so declare, hence, as stated, the numerous exceptions hereinabove discussed were well taken and are sustained.

We are also of the opinion there was error in the rulings of the court in not allowing defendant to cross-examine the prosecutrix as to conflicting statements made by her on the former trial of this case. The rule in this connection is fixed by statute and provides the right of cross-examination thorough and sifting belongs to every party as to the witnesses called against him. Section 7731, Code 1923. It has been repeatedly held that contradictory or conflicting statements made by a witness on a former trial of the same case may be shown, not as original testimony, but for the purpose of impeachment and as affecting the credibility of the witness.

It was right and proper for the court to allow the state to offer evidence of all that transpired after the prosecutrix left her home and until the alleged commission of the offense, as all this was so close in point of time and place as to be a part of the res gestae. However, the court should have allowed the defendant the same opportunity and should have permitted him and his witness Curl Stewart to testify in contradiction of the evidence offered by the State in this connection. In sustaining the State's objection to said witnesses on this point, the court fell into error, and the exceptions reserved are well taken.

Other points of decision are presented on this appeal, but are not deemed necessary to a decision, hence will not be discussed. Nor need we write to the rulings of the court complained of which appear free of error. Numerous insistences as to such rulings cannot be sustained, they being without error of a prejudicial nature.

The judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.