36 So.2d 574
### SUMMERS et al. v. STATE.
### 7 Div. 945.

Supreme Court of Alabama.
May 13, 1948.

Rehearing Denied June 30, 1948.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the petition.

Merrill, Merrill & Vardaman, of Anniston, opposed.

BROWN, Justice.

The defendants Conrad Summers and Horace T. Pope were indicted by a grand jury empaneled in the Circuit Court of Calhoun County for the offense of rape committed on the person of Ruby Williams. After severance on motion of state was granted, by consent defendants were jointly tried and were convicted by a petit jury as charged in the indictment. The punishment of Summers was fixed by the jury at imprisonment in the penitentiary for a term of ten years and that of Horace T.

Pope at imprisonment in the penitentiary for a term of fifteen years. After judgments of conviction and sentences duly entered in accordance with the verdict, both appealed to the Court of Appeals where said judgments were reversed and the causes remanded for a new trial. The sole basis for the reversal is stated in the opinion of the Court of Appeals, 36 So.2d 571, as follows:

"The prosecutrix testified both at a preliminary hearing and at the trial below. As a witness in the trial below she testified that she had never before been out to the Holly Springs Church, the locus of the alleged offense; that she thought they got to the church shortly before nine o'clock, and that she had told the defendants she had to be home by nine, but that she did not ask anyone what time it was when they got to the church; that during her struggle Conrad Summers had his hand over her mouth and his fingers in her mouth in an attempt to stifle her outcries; and that she bit Summers' fingers.

"In an attempt to impeach this witness as to the above portions of her testimony, a proper predicate was created for the impeachment of the testimony that she had not testified to facts different from the above at the preliminary hearing, or that she did not remember so testifying.

"Later in the trial and for the purpose of impeachment as to the above testimony, the defendants offered to introduce into evidence excerpts from the testimony of the prosecutrix at the preliminary hearing after such excerpts had been checked and certified as correct by the official court reporter who took such testimony. The court sustained the States' objection to such evidence. In this connection the record shows the following:

" 'Mr. Vardaman: The defense offers to have the Court Reporter check the transcript written out on several pieces of paper as to being true and correct copies of the excerpts read to the witness, Ruby Williams, on cross examination, and upon same being certified as being true by the Court Reporter, introduce them in evidence.

" 'Mr. Cockrell: Object to that unless they introduce the whole record.

"'The Court: I will sustain the objection and will give you permission to offer in evidence—

"'Mr. Cockrell: (Interrupting) You mean you will admit in evidence any pages they refer to?

"'The Court: The official transcript, but not any excerpts.

"'Mr. Vardaman: Will Your Honor permit us to introduce the pages?

"'The Court: No. You may mark any section of it and note the pages you want to offer, and offer the whole transcript.

"'Mr. Merrill: We except.

"'Mr. Vardaman: We rest.

"'The Court: Any rebuttal?

"'Mr. Cockrell: Yes, sir.'

"Thereafter the defendants called Mr. Thomas V. Barry, the official Court Reporter for the Seventh Judicial Circuit. Mr. Barry testified that he took down the testimony at the preliminary hearing of these two defendants. He was then asked to refer to his shorthand notes taken at such hearing, for the purpose of refreshing his recollection. An attempt was then made to show by this witness that the prosecutrix had testified differently at the preliminary hearing from the testimony given by her at the trial concerning the matters above mentioned. The court sustained the State's objection to all such questions.

"In our opinion the above evidence was material to the issues involved in this case. The strength or weakness of its probative force does not affect its competency. The testimony of the prosecutrix on the above points being material, the defendant, after establishing the proper predicate for impeachment, as they did, should have been allowed to offer her testimony at the preliminary hearing which would tend to impeach her testimony at the trial below. Stewart v. State, 27 Ala.App. 315, 172 So. 675; Davis v. State, 30 Ala.App. 562, 10 So.2d 35; Mullins v. State, 31 Ala. App. 571, 19 So.2d 845; Pearce v. State, 226 Ala. 436, 147 So. 617.

"It is allowable for any competent person who heard the former testimony of a witness sought to be impeached to testify as to what was the former testimony.—Woods v. Postal Telegraph-Cable Co., 205 Ala. 236, 87 So. 681, 27 A.L.R. 834. Nor is his competency affected by the fact that he may first have refreshed his recollection from notes made during the former hearing.—Morris v. State, 23 Ala.App. 448, 126 So. 612. Furthermore, only such portions of the former testimony as tend to contradict the testimony at a second hearing are admissible.—Woods case, supra; Tyler v. State, 19 Ala.App. 380, 97 So. 573; Ex parte State ex rel. Davis, 210 Ala. 96, 97 So. 573. Certainly the entire record of the preliminary hearing was not admissible under the defendants' attempt to impeach the proxecutrix as to certain portions of her testimony, though the State would have had the right to introduce any further portion of her testimony at the preliminary hearing that tended to clarify or explain that portion of her testimony sought to be impeached. It is our conclusion therefore that the trial court erred in sustaining the State's objections to the questions of the defendants seeking to impeach the testimony of prosecutrix given at the trial below. * * *'"

■ On the state's application for the writ of certiorari to review said rulings the writ of certiorari was granted and the case set down for oral argument under Rule 44, Supreme Court Practice. Code of 1940, Tit. 7, p. 88.

On oral argument at the bar the statement in the opinion of the Court of Appeals set out above was clarified and in the light of the argument it is permissible for us to examine the record for a more complete understanding of these features of the case treated by the Court of Appeals and look at the predicate laid for the impeachment of the witnesses. John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 28 Ala.App. 353, 184 So. 270; Id., 236 Ala. 548, 184 So. 275; Brown v. State, 249 Ala. 5, 31 So.2d 681; Mutual Savings Life Ins. Co. v. Osborne, 247 Ala. 252, 23 So.2d 867.

■ The attorney general, aided by the solicitor of the circuit in which this case was tried, in argument strenuously in-

sisted that in the absence of a showing that the testimony at the preliminary hearing was not reduced to writing by the committing magistrate or under his supervision and approval and signed by the witnesses, as required by § 135, Title 15, Code of 1940, or its absence otherwise accounted for, the transcript produced by the defendants on the trial was subject to the objection that it was not the best evidence of what the witnesses testified to on the preliminary trial and it was not permissible to use the same to lay the predicate to impeach the witness nor to support any such predicate laid. That the use of such unofficial transcript for any purpose violates the best evidence rule as laid down in the authorities. Davis v. State, 168 Ala. 53, 52 So. 939; Blanks v. State, 30 Ala.App. 519, 8 So.2d 450; Jones v. State, 30 Ala.App. 360, 6 So.2d 26.

In the light of the authorities cited, the court is of the opinion that this contention of the state should be sustained, and we hold that the court did not err in rejecting the transcript which was brought into court by the defendants, nor in sustaining objections to parol testimony offered by the defendants to meet the predicate laid in the instant case.

On this point all of the Justices concur.

The writer, however, is further of opinion that inasmuch as the defendants brought into court a transcript of the testimony of the prosecutrix taken by the court reporter on the preliminary hearing, though not official, and that defendants used the same in laying the predicate to impeach the witness and to sustain that predicate, it was fair to the witness and to the jury for said transcript to be used to meet the predicate, and the defendants could not resort to parol testimony or excerpts copied from the transcript to sustain the predicate.

Looking to the record, I find that the following occurred in laying the predicate:

"Let's see if they did—'Did you bite his hand when he put it in your mouth' and you answered 'No.' And then I asked you 'Why didn't you?' and you. said 'He had his hand like this.' And 'And you didn't try to bite his hands?' and you answered 'No, I was screaming.' 'How do you mean he had his hands in your mouth?' Answer 'He had them on my mouth like this (demonstrating).' 'And you never tried to bite his hands?' and you answered 'No.' * * *. * * *

"Q. But you told us on the preliminary hearing that you didn't? A. I don't know—I did bite his fingers.

"Q. Can you read? A. Yes, I can read.

"Q. Will you start right here and read and tell me whether you said you did bite them or not? (Hands transcript of preliminary hearing to witness.) Now, what does that say? A. It says I said it.

"Q. Did you or not bite them? A. Yes, it says that.

"Q. What did he do when you bit his fingers? A. I don't know—they were just fighting and cursing me.

"Q. Did you make the blood come out of them? A. I don't know, it was dark.

"Q. How long did you bite them? A. I don't know.

"Q. What did he do when you bit his fingers? A. He was fighting me * * *."

"A. I saw them with a bottle in their hands. I don't know the last time they had a drink. That is the only time I saw them actually drink any.

"Q. That was at the Rainbow Inn? A. Yes.

"Q. You didn't see them take any before they got to the Rainbow Inn? A. No, sir.

"Q. And you didn't testify on the preliminary hearing of this case that they did take a drink or two before they got to the Rainbow Inn? A. They had the bottle but I don't remember seeing them take any.

"Q. Look at this (Producing transcript of preliminary hearing)—Now, you testified on preliminary examination that they took a drink of whiskey before they got to the Rainbow Inn? A. I don't remember if I did.

"Q. What does this say? A. It says that.

"Q. That says you did? A. Yes. * * *."

Defendants did not offer this certified transcript which was treated by the court and the parties as the official record of the preliminary hearing but they proposed to the court to have the court reporter copy from said transcript certain excerpts to impeach the witness. The objection of the solicitor to the introduction of these excerpts was sustained. Then the defendants called the reporter to the stand, being the same person who reported the preliminary trial, and asked him to refer to his stenographic notes to ascertain what the prosecutrix testified in respect to said predicates and an attempt was then made to show by this witness that the prosecutrix had testified differently at the preliminary hearing from the testimony given at that time. The court sustained the state's objection to all such questions. During the oral argument in this court counsel for the state read from the record the statement of the court made at the time, towit:

"The Court: I will sustain the objection and will give you permission to offer in evidence—

"Mr. Cockrell (Interrupting): You mean you will admit in evidence any pages they refer to?

"The Court: The official transcript, but not any excerpts.

"Mr. Vardaman: Will your honor permit us to introduce the pages?

"The Court: No. You may mark any section of it and note the pages you want to offer, and offer the whole transcript. * *

"Mr. Merrill: We except.

"Mr. Vardaman: We rest. * * *."

Thereafter the court in ruling on the objection of the solicitor in reference to the same matter said (to the solicitor):

"The Court: I agree with you. They have got the right to offer the parts involved.

"Mr. Cockrell: They are not offering them. The record is the higher and best proof.

"Mr. Vardaman: We just want to get it into the record. * * *."

The court sustained the objection and Mr. Vardaman excepted.

"The Court: You have got a right to offer the record and let it go out to the jury.

"Mr. Merrill: That is not the purpose— just to show how she swore on one occasion and how she swears on another.

"The Court: The jury knows how she swore on this trial.

"Mr. Merrill: We are attempting to show by a witness who was present at this other trial, and who took down the testimony—the questions and answers, and that she swore differently on the other trial.

"The Court: As I say, the jury has heard her testimony in this case. If you offered the whole official record taken in the other trial—go ahead.

"Q. (By Mr. Vardaman reading from transcript of testimony taken on the preliminary trial). Mr. Berry, I will ask you if Ruby on cross examination testified as follows: Question: 'And then you went from Jimmy's Place to the little church?' Answer: 'Yes.' Question: 'Do you have any recollection about what time it was when you got there?' Answer: 'Horace said it was not eight yet.' Did she testify that?

"Mr. Cockrell: Object to that.

"The Court: Sustained.

"Mr. Vardaman: Except.

"Q. (By Mr. Vardaman). Now, I will ask you if she further testified on cross examination as follows: Question: 'Which did he turn loose, your arm or your leg when he did that?' Answer: 'My arm.' Question: 'Did he ever turn loose your leg?' Answer: 'No.' Did she testify to that?

"Mr. Cockrell: Object to that—not reading from the record, and the record is the highest and best evidence.

"The Court: Sustain the objection.

"Mr. Vardaman: Except. * * *."

The circuit court in these several rulings followed well settled rules of trial practice established by the decisions of this court designed to promote fairness to the parties and the witness sought to be im-

peached and to aid the jury in ascertaining the truth. In Kennedy v. State, 85 Ala. 326, 330, 331, 5 So. 300, 301, decided more than a half century ago by this court, it' was observed:

"The testimony of the witness McCarron, taken before the magistrate on the preliminary investigation of the facts attending the killing having been reduced to writing, the court did not err in refusing to allow him to be cross-examined as to garbled extracts taken from the writing, with a view of contradicting or impeaching him. The court properly required that the entire writing should be shown or read to the witness and go to the jury. Wills v. State, 74 Ala. 21; Gunter's case (Gunter v. State) 83 Ala. 96, 3 So. 600. Nor was the charge of the court to the jury erroneous, that the paper should not be treated as original evidence of the facts of the case, nor be received for any other purpose than that of contradicting or impeaching the witness. Jones v. Pelham, 84 Ala. 208, 4 So. 22. The paper was entire and not severable, and it was impracticable to admit a part of it to go to the jury. The practice in such cases is to admit the entire paper, and limit its effect as evidence by a proper charge to the jury, as was done by the circuit court on the trial in the case. Wills v. State, 74 Aa. 21, supra."

And again in Wills v. State, 74 Ala. 21, decided some years earlier, Chief Justice Stone, speaking for the court, observed:

"After the witness had been cross-examined as to the contents of the sworn testimony, with a view of showing discrepancy between it and the testimony then being given, there was no error in permitting the prosecuting attorney to read to the jury the entire written testimony of the witnesses, thus attempted to be discredited. It was but just that the whole connected statement should go before the jury, to enable that body to institute a comparison between the two statements. It was competent for no other purpose. If the defendant apprehended the jury would treat the affidavits as original and general evidence in the case, that was a subject for a charge, limiting its operation. To put the court in error, such charge must have been requested and refused. 1 Brick. Digest, 809, § 87; Ib. 810 § 98."

On the appeal of Will Carter who had been convicted in the Circuit Court of Jefferson County for murder, this court, in speaking through Justice Bouldin, observed:

"Defendant's witness E. D. Davis was, on cross-examination, questioned as to certain statements made by him on a coroner's hearing. The witness was permitted and directed to read the whole of such former testimony as taken by a court stenographer. On objection by defendant, the solicitor stated: 'For the purpose of impeaching him.'

"If this was not deemed sufficient to properly limit the testimony to purposes of impeachment, an objection should have been interposed on such ground, or the court requested to give an instruction. Thomas Furnace Co. v. Carroll, 204 Ala. 263, 266, 85 So. 455. The proper practice was pursued in first allowing the witness to refresh his recollection by reading the entire note of testimony; then cross-examining him on such points as were at variance with his testimony on the stand. In case of denial, such former statements became admissible when proved to be correct. It became the right of the defendant, if he so desired, to thereafter offer the whole of such former testimony In this case, however, he did not so elect. It was offered by the state, and refused on defendant's objection. We find no error in these rulings. Manning v. State, 217 Ala. 357, 116 So. 360; Wills v. State, 74 Ala. 21." Carter v. State, 219 Ala. 670, 673, 123 So. 50, 51.

The effect of the ruling there was that the defendant could not predicate error on a favorable ruling on his objection.

This rule of trial practice was reaffirmed in Manning v. State, 217 Ala. 357, 116 So. 360, restated and followed by the Court of Appeals in Humber v. State, 19 Ala.App. 451, 455, 99 So. 68, and in Bush v. State, 19 Ala.App. 650, 655, 100 So. 307.

■ Cases cited in the opinion of the Court of Appeals—Stewart v. State, 27 Ala. App. 315, 172 So. 675; Davis v. State, 30 Ala.App. 562, 10 So.2d 35; Mullins v.

State, 31 Ala.App. 571, 19 So.2d 845; Pearce v. State, 226 Ala. 436, 147 So. 617—merely hold that a witness may be impeached by showing contradictory statements as to material matters. Those cases did not involve the quo mode of such impeachment. In the instant case the defendants used the verified transcript of the testimony of this witness in laying the predicate for her impeachment, which was exhibited to her while testifying. Hence the court properly ruled in requiring the defendants to use that transcript to meet the predicates they had laid on the cross examination of the prosecutrix.

Our opinion and judgment is that the Court of Appeals erred in reversing the circuit court on the ruling indicated and set forth in the opinion of that court.

The other questions presented to the Court of Appeals were correctly treated and properly decided.

It appears from the opinion of the Court of Appeals that the judgments of conviction were reversed solely on the rulings of the circuit court above adverted to.

The majority, including the writer, are of the opinion that the judgment of the Court of Appeals should be reversed and one here rendered affirming the judgments of conviction. SIMPSON, J., is of the opinion that the case should be remanded to the Court of Appeals.

Reversed and rendered.

All the Justices concur except SIMPSON, J., who is of opinion the case should be remanded to the Court of Appeals.