Ralph Edward Bighames, the appellant, was indicted and convicted for rape in the first degree. Sentence was life imprisonment. Three issues are raised on appeal. *Page 1233 
 I
Bighames argues that the trial judge erred in allowing evidence of prior rape. Under the identity exception to the general exclusionary rule prohibiting the admission of other or collateral crimes as substantive evidence of the guilt of the accused, the prior crime is not relevant to prove identity unless both that and the now-charged crime are "signature crimes" having the accused's mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person. Thomas v. State, 409 So.2d 955, 957
(Ala.Cr.App. 1981); C. Gamble, McElroy's Alabama Evidence, Section 69.01 (8) (3rd ed. 1977).
Bighames was charged with the rape of a single individual. This offense occurred on November 29, 1981, when Bighames, Sylvester Gosha, and an unidentified third individual abducted two young females from the campus of the University of Alabama in Birmingham. Both young women were raped and sexually assaulted in a particularly degrading manner. At Bighames' trial, the judge allowed the State to prove that two days before this offense Bighames had also participated in the abduction and rape of two other young women from the U.A.B. campus. Because the similarity of the two offenses is not questioned, we need not enumerate the details of each offense in order to demonstrate their correspondence and Bighames' particular "signature" in each offense. We do note that it is hard to imagine more identical offenses.
Bighames argues that the prior rapes were not admissible to prove his identity because the trial judge limited the purpose of these other offenses to showing intent or a pattern of conduct. The basis for this issue is found in the fact that initially the trial judge instructed the jury that the prior rapes were admissible on the issue of identity but, in his oral charge, he stated that the offenses were for the purpose of intent.
During the trial, the judge repeatedly instructed the jury that the prior rapes went to the issue of identification. Before admitting the testimony of one of the victims of the prior rapes, the judge instructed the jury that the testimony was going to be admitted for a "very limited purpose . . . . only for the purpose of your consideration for identification or a possible plan or pattern known as modus operandi, a plan or pattern. It comes to you under two aspects, one for identification, the other for plan or pattern." When the judge later admitted fingerprint evidence linking Bighames to the prior incident, he again charged that the evidence was being admitted "only for the limited purpose" and "only as to the question of the identification or pattern or scheme. And that's the only reason that comes in."
However, in his oral instructions to the jury at the end of the trial, the judge charged that the evidence of the other offenses was admissible on the issue of intent.
 "Now, this is the third time I've said this, so you all know it well. . . . I told you when it first came up, when she first testified, that it plays no part in the guilt or innocence of the defendant in this case except it is and the law says that it can be introduced to show intent . . . or to show a pattern of conduct. . . . But I only remind you of what I've said before." (emphasis added)
No objection was taken to this portion of the judge's oral charge.
Evidence that the accused has committed other rapes in a novel or peculiar manner is clearly admissible to show the identity of the now-charged offense. McElroy, Section 70.01 (22)(b). However, since the crime of rape carries no specific intent, the "intent exception" to the general rule excluding evidence of other offenses is generally inapplicable. McElroy, Section 70.01 (22)(d).
Bighames' argument that the judge's instructions precluded the admission of the other offenses must be rejected. The testimony concerning the other rapes was properly admitted during the trial on the issue of identity. That evidence was also admissible to show that both offenses were *Page 1234 
committed pursuant to a common plan or scheme. McElroy, Section 70.01 (22)(c), citing Summers v. State, 33 Ala. App. 358,36 So.2d 571 (1947), reversed on other grounds, 251 Ala. 38,36 So.2d 574 (1948). The judge's instructions in charging the jury did not render that properly admitted evidence inadmissible. A trial court will not be placed in error for assigning the wrong reason for a proper ruling, if that ruling is correct for any reason. Harnage v. State, 290 Ala. 142, 144, 274 So.2d 352
(1972); Nichols v. State, 276 Ala. 209, 213, 160 So.2d 619
(1964); Nettles v. State, 222 Ala. 236, 237, 132 So. 41 (1931);Walker v. State, 416 So.2d 1083, 1092-93 (Ala.Cr.App. 1982).
Although instructions should be harmonious and not inconsistent, conflicting, or contradictory, conflicting and inconsistent instructions are not necessarily prejudicial. 24B C.J.S. Criminal Law, Section 1922 (4) at 170 (1962). "Where instructions given to the jury for their guidance present contradictory and conflicting rules which are unexplained, and where following one would or might lead to a different result than would obtain by following the other, the instructions are inherently defective." 75 Am.Jur.2d Trial, Section 628 (1974).
Here, the fact that the trial judge mistakenly substituted the word "intent" for "identity" in his oral charge must only be viewed as an inadvertent error which did not cause prejudice. Considering this particular error within the context of the oral charge, and guided by the application of common sense, it is clear to this Court that no injury occurred to Bighames. It has long been the law in this state that "(w)here a portion of the oral charge is erroneous or misleading, the whole charge may be looked to, and the entire charge must be construed together to see if there be reversible error." Harrisv. State, 412 So.2d 1278, 1281 (Ala.Cr.App. 1982). Here, the trial judge specifically told the jury that he was "reminding" them of the instructions he had previously given them. Moreover, in his oral charge he never instructed the jury that they should consider the evidence of the prior rapes only on the issue of intent.
Finally, we note that this error was not preserved for review. Ex parte Allen v. State, 414 So.2d 993 (Ala. 1982). The mistake occurred in the court's oral charge to which defense counsel did not object. Since this issue was not raised at trial, it cannot be argued on appeal. Knight v. State, 273 Ala. 480,487, 142 So.2d 899 (1962); Moore v. State, 415 So.2d 1210,1217 (Ala.Cr.App. 1982).
 II
The introduction of testimony of Bighames' absence from Alabama following the crime and his arrest in California and the trial judge's instructions on flight was not error. This issue is also not preserved for review because no objection was made to evidence of the arrest in California or to the instructions on flight. It is well settled that flight is a circumstance which the jury may consider even where the conduct of the defendant tending to show flight is weak and inconclusive. Tiner v. State, 279 Ala. 126, 134, 182 So.2d 859
(1966); Tate v. State, 346 So.2d 515, 520 (Ala.Cr.App. 1977);Chancellor v. State, 38 Ala. App. 89, 91, 80 So.2d 313, cert. denied, 262 Ala. 700, 80 So.2d 315 (1954); McElroy, Section 190.01.
 III
The final argument is that the trial judge committed reversible error in admitting into evidence Bighames' fingerprint card because the technician who made the card could not positively identify Bighames as the individual whose prints she took. It is also argued that this same error was committed in the admission of the fingerprint card of Gosha, Bighames' accomplice.
The fingerprint cards were used to link Bighames and Gosha to the prior rapes committed on November 27th. On appeal, the State argues that the cards were properly admitted as a business record and for that reason the predicate for their admission did not include the positive identification of the *Page 1235 
accused by the individual making the fingerprint card.
The general rule is that the identification expert must have personal knowledge of the person whose fingerprints are on the fingerprint card before that witness can testify that the card bears the fingerprints of a specific individual. People v.Zirbes, 6 Cal.2d 425, 57 P.2d 1319, 1322 (1936). Otherwise, the expert's testimony constitutes hearsay and the admission of the fingerprint card is improper. Zirbes, supra. See also State v.Seales, 245 Iowa 1074, 65 N.W.2d 448 (1954); People v.Hardnett, 45 Mich. App. 247, 206 N.W.2d 470 (1973).
Although fingerprint records may properly be admitted as business records, State v. Rives, 220 Kan. 141, 551 P.2d 788
(1976); State v. Medley, 11 Wn. App. 491, 524 P.2d 466 (1974), at trial it does not appear that the prosecution specifically sought to qualify Bighames' and Gosha's fingerprint cards as business records under Alabama Code Section 12-21-43 (1975).
The testimony at trial reveals that Birmingham Police Officer Norma K. Hunt testified that in December of 1981 she was working in the City Jail where she "booked people in, helped with processing the prisoners, also fingerprinted, job applicants." She identified Bighames' fingerprint cards as "fingerprint cards or palm prints that I made. I signed my name and dated it." She testified that the person whose fingerprints she took signed the card and the card was signed "Ralph Bighames". After getting the prints, Officer Hunt delivered them to Joy Lance, the technician in the I.D. Bureau.
Officer Montala Roshada testified to the same effect with regard to Gosha's fingerprints. Both officers candidly stated that they had no independent recollection of the individual whom they fingerprinted.
The apparent basis for applying the business record exception in this case is found in the testimony of fingerprint technician Joy Lance. She stated that she retrieved the fingerprint cards from "our alphabetical file that is maintained in the Bureau." Although the predicate could most certainly have been laid in a more definite and explicit manner, a good argument can be made that the record contains sufficient information to authorize the admission of the fingerprint cards as business records under Section 12-21-43. Additionally, we note that the fingerprint card was signed "Ralph Bighames". "The general rule is well settled that identity of name imports, prima facie, identity of person."Esco v. State, 278 Ala. 641, 643, 179 So.2d 766 (1965). See also Freeman v. Hall, 286 Ala. 161, 165, 238 So.2d 330 (1970). No evidence was presented to rebut this presumption. McCord v.State, 373 So.2d 1242, 1244 (Ala.Cr.App. 1979); Williams v.State, 364 So.2d 717, 719 (Ala.Cr.App. 1978); Dunaway v. State,50 Ala. App. 200, 202, 278 So.2d 200, cert. denied, 291 Ala. 93,278 So.2d 205 (1973).
Even if the admission of the fingerprint cards were improper, that error was harmless in view of the other evidence against Bighames. A.R.A.P. 45. See Little v. United States, 93 F.2d 401
(8th Cir. 1937), cert. denied, 303 U.S. 644, 58 S.Ct. 643,82 L.Ed. 1105 (1938), and Brown v. State, 55 Ala. App. 264,314 So.2d 717, cert. denied, 294 Ala. 241, 314 So.2d 721 (1975), as authority for the proposition that the improper introduction of fingerprint evidence may constitute harmless error.
Here, Bighames and Gosha were positively identified by one of the victims of the prior rapes. (The other victim did not testify.) As in Brown, supra, the fingerprint card was "absolutely unnecessary" to the State's case. The evidence against Bighames was overwhelming. Our review of the record convinces us that the fingerprint card had no influence on the jury's verdict.
Bighames is represented at trial and on appeal by diligent and experienced counsel who has preserved and protected Bighames' constitutional rights at every stage of the proceedings. Despite his arguments to the contrary, we are convinced that Bighames *Page 1236 
received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.