19 So.2d 845

**MULLINS v. STATE.**

**4 Div. 858.**

Court of Appeals of Alabama.

Nov. 28, 1944.

572

W. L. Lee and Alto V. Lee, III, both of Dothan, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Forman Smith, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant was indicted for murder in the first degree. To the indictment he interposed pleas of not guilty and not guilty by reason of insanity. He was convicted of murder in the second degree.

The circumstances of the homicide are not in material conflict. Appellant disclaimed any knowledge or recollection whatsoever of the events relating to the occasion when undisputedly he shot the deceased with a pistol.

■ It will not add clarity or import to this opinion to analyze the testimony. Suffice it to say the State's evidence amply supported an unlawful homicide. Appellant introduced much evidence in aid of his special plea. The prime questions revolved around the inquiry of defendant's sanity vel non.

While qualifying the members of the venire anticipatory to selecting a jury to try the case, the court inquired of each juror if he had a reason to offer why he could not accord to the defendant and the State a fair trial should he be selected as one of the number to try the case. One of the group answered that he had a fixed opinion and he was "afraid he would follow this opinion irrespective of the evidence." The State challenged the juror for cause and, over the objection of appellant's counsel, the trial court did not permit the juror's name to be included on the striking list.

■ The law contemplates, and fair, untrammeled justice demands, that each case in the courts, where a jury is required, be tried by an impartial, unbiased jury. Our Legislature has provided safeguards. As applied to the instant consideration, we find: "It is a good ground for challenge *by either party* * * * that he has a fixed opinion as to the guilt or innocence of the defendant, which would bias his verdict." (Emphasis ours.) Code 1940, Title 30, § 55(7).

Our appellate courts also have always taken a firm position in recognizing and upholding this sacred constitutional security. Jackson v. State, 77 Ala. 18; Folkes v. State, 17 Ala.App. 119, 82 So. 567.

■ The primary court has the first and most important opportunity to protect and preserve this ancient guarantee. When it clearly appears that a prospective juror entertains a fixed opinion as to the guilt or innocence of the defendant and thus possesses a disqualification of such vital materiality, it is not only the right but the duty of the trial judge to promptly excuse him.

■ It appears from the record that the solicitor, or someone for him, had prepared a drawing or diagram of the locale of the alleged homicide. Appellant's counsel objected to reference being made to this outline when the solicitor was interrogating a witness and the later introduction of same in evidence. An occupant of the house where the deceased was killed, and one thoroughly familiar with the location, had testified that the drawing was accurate and a fair and correct representation of the premises it sought to describe. There is no merit in this claim. Burton v. State, 107 Ala. 108, 18 So. 284; Noel v. State, 161 Ala. 25, 49 So. 824.

It may be observed also that this ruling could not ultimately inure to the harm of appellant since there was no issue raised in the testimony relating to the description of the house in question.

■ As a witness for the State on direct examination, Mrs. Annie Defnall, wife of deceased, stated: "He was sitting pretty close to the door facing the corner and he pushed the door open and said, 'Oh, Mr. Mullins, what in the world is the matter!', and he turned around and shot him. * * * I saw him fall when I turned and left."

On cross examination of the same witness the record shows:

"Q. You testified before the grand jury? A. Yes.

"Q. Well, didn't you testify that after your husband said, 'What in the world is the matter with Mr. Mullins', then he fired and then you ran?"

The trial court sustained the solicitor's objection to this question. In this ruling there was no error. It is clearly apparent that the latter statement, if made by witness when testifying before the grand jury, was not in contradiction to her narration of the events when testifying on the main trial, as indicated above.

■ While a witness may always be impeached by showing that he has made a contradictory statement as to material matters before the grand jury, the inquiry must be limited to contradictions and not corroborations. Riley v. State, 21 Ala.App. 655, 111 So. 649; Lester v. Jacobs, 212 Ala. 614, 103 So. 682.

A large number of witnesses were called and interrogated as to the good character of appellant. To be exact, there were thirty-six, according to our count. After they stated on direct examination that ap-

pellant's character was good, some of the witnesses answering also that it was good for peace and quiet, one of the prosecuting attorneys, without exception in the cross examination of any of the thirty-six witnesses, propounded, either verbatim or in substance, one or the other of the following questions:

"Assuming that this defendant had gone to the home of another man at night time and shot a pistol around in the room and a young lady ran out by him and he ran out after her and shot the pistol again and then he turned around when a man asked him what was the matter—he turned around and shot this man, would you say that he was a man of good character?"

"Assuming these facts to be true: that Mr. Mullins put a pistol in his pocket in the night time and went to the home of a citizen of Dale County and there went into the kitchen where the family were, one girl whose life he had threatened, and pulled out a pistol and fired twice in the kitchen and when that girl ran out the kitchen door he fired again in that direction and when the head of the house asked him, 'Mr. Mullins, what in the world is the matter?', he turns and shoots him and kills him, do you say that that man is a man of good character for peace and quietude?"

Over the objections of appellant's counsel, the witnesses were required to respond. The record discloses various forms of answers, some, "No", some, "Yes", some, "I don't know. Others made conditional and evasive replies. There are indications of much confusion and uncertainty on the part of many of the witnesses as to the meaning and import of the question.

 It is a well recognized rule that character must be shown and established by evidence of general repute. This does not contemplate proof of specific conduct. Without question, a person's behavior becomes a basis upon which his associates, friends and neighbors must rely in appraising his character or reputation. The inquiry, however, should not be directed to some particular performance, but rather the resultant of the course of behavior as it impresses the community life of the person whose character is involved. This rule applies with equal force to both direct and cross examination of a character witness. The permission allowed to wide latitude in cross examination does not permit an infraction of the principle stated above.

Moulton v. State, 88 Ala. 116, 6 So. 758, 6 L.R.A. 301.

 Confusion sometimes arises in distinguishing between the right to cross examine a witness who testifies to good character to ascertain his estimate of character as affecting his credibility and the prohibition against inquiring as to specific conduct. In the former inquiry it is complying with the rule for the opposing counsel to ask the witness if he has not heard of certain misbehavior which would tend to mitigate against the character of the person whose good repute the witness is seeking to uphold. This is allowed for the reason that an adversary has the right to test the accuracy, credibility and sincerity of a witness when the privilege of cross examination is exercised. However, care and caution should be employed by the primary court in applying this rule, because it is very easy to abuse the liberty and inject into the trial unfair and harmful issues that are foreign to the inquiries at hand. Morris et al. v. State, 25 Ala.App. 175, 142 So. 685.

In recognition of the above stated principle and rule, Judge Bricken, presiding judge of this court, in the case of Jimmerson v. State, 17 Ala.App. 552, 86 So. 153, 154, said: "The general rule is that character, whether good or bad, can only be proved by general reputation and evidence of particular acts or conduct is inadmissible, both on the direct and cross-examination, though in the latter a greater latitude is allowed than in the former; and, while a witness may sometimes on cross-examination be asked irrelevant questions to test his accuracy, veracity, or credibility, even on cross-examination the inquiry must be kept within bounds, and it is not permissible for the inquiry to extend to particular acts or to isolated facts. Thompson v. State, 100 Ala. [70], 71, 14 So. 878. In other words, on the cross-examination of a witness who has testified as to the general good character of defendant, it is permissible to ask the witness if he had not heard it reported in the community that the defendant had committed certain unworthy acts, naming them, but this even is not allowed for the purpose of affecting the character of the defendant, but as evidence affecting the credibility of the witness testifying to good character. Carson v. State, 128 Ala. 58, 29 So. 608; Williams v. State, 144 Ala. 14, 40 So. 405; Smith v. State, 103 Ala. 57, 15 So. 866. Such examination

is also permitted for the purpose of either showing that the witness was mistaken in his estimate, or for shedding light on his estimate of such character. Stout v. State, 15 Ala.App. 206, 72 So. 762."

See also: Hill v. State, 194 Ala. 11, 69 So. 941, 2 A.L.R. 509; Stanfield v. State, 3 Ala.App. 54, 57 So. 402; Roberson v. State, 21 Ala.App. 196, 106 So. 696; Andrews v. State, 159 Ala. 14, 48 So. 858; Maxwell v. State, 11 Ala.App. 53, 65 So. 732; Thompson v. State, 100 Ala. 70, 14 So. 878; Vaughan v. State, 201 Ala. 472, 78 So. 378.

From the opinion in Harmon v. State, 22 Ala.App. 288, 115 So. 67, we quote the following: "After Mr. Mohr had qualified and testified to the good character of defendant, the solicitor, over proper objection and exception, was allowed to ask the witness Mohr, on cross-examination: 'Would you think a preacher who would leave his sick wife home on New Year's night and go out to a woman's house and stay with a woman, with a half pint of liquor, would have good character?' To which the witness answered, 'No.' Motion was made to exclude the answer."

The court observed: "The testimony of the witness Mohr was limited to the general character of the defendant. The question asked on cross-examination was as to particular acts and conduct, and under the evidence here could have had reference only to the defendant. The question is without the rule laid down."

In the instant case the questions made the basis for this immediate consideration were hypothecated on facts which formed a part of the res gestae of the alleged homicide for which the appellant was then on trial. The record establishes this conclusion where there can be no room for question or cavil. The situation thus presented, however, does not alter or change the rule.

In Chiles v. State, 26 Ala.App. 358, 159 So. 700, the defendant was on trial for larceny of two bales of cotton. J. H. Phillips, defendant's witness, testified: "Have known Jim Chiles about twenty-eight years. His character is good." On cross examination the solicitor interrogated him as follows: "Would you tell this jury that a man that is a cotton thief is a man of good character?" The court held the latter question improper and highly prejudicial.

In the case of Cole v. State, 16 Ala.App. 55, 75 So. 261, the opinion does not set out the language of the question propounded to the character witness McAdory on cross examination. In order to make a fair and accurate illustration, we have sought out the original record in the Cole case, supra, and it is before us. The question in point is: "What would you say of a man's character, assuming he had used abusive, insulting, obscene language in the presence of a man's wife and he resents it and shot him down, would you think that is a man of good character?" The original record shows also that this question was predicated on evidence introduced by the State as tending to show some of the circumstances of the occurrences at the time of the homicide for which defendant Cole was then being tried. The Appellate Court observed that since the question was not answered overruling the objection was without injury to defendant. Nevertheless, the holding was to the effect that the question was improper.

In Gray v. State, 21 Ala.App. 409, 108 So. 658, 659, the defendant was charged with murder resulting from an altercation at a crap game in a road camp. We quote from the opinion.

"When the witnesses Miller Green and Joe Green were on the stand as witnesses for defendant, and had testified to his general good character, the solicitor on cross-examination asked each of them this question:

" 'Do you consider a man of good reputation that puts a pistol in his pocket in the day time, conceals it about his person, and goes over to his neighboring town, Jacksonville, Ala., and spends a portion of the day, and goes back to a church with his own people with a pistol concealed on his person, and goes from there to a road camp where gambling is going on, and engages for more than two hours in what they call a skin game, the pistol still concealed on his person, would you still consider him a man of good repute?'

"The foregoing questions were predicated upon facts testified to by the state's witnesses, and could have only referred to the defendant. A witness to character cannot speak of particular acts, or even the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives. And it is held that the cross-examination of a character witness must be conducted within the limits of this inquiry."

We have treated this insistence for error at extended length in an endeavor to clarify the rule which was so many times misapplied in the instant case. We must hold that the lower court was in error in overruling objections to the questions on cross examination of the character witnesses, which ruling is made the basis for this immediate consideration.

Written charges numbered 6, 8, 9 and 10 were refused to appellant. The Reporter will set them out in the report of this case.

Charges 6, 8 and 9 were properly refused in that each misplaces the burden of proof as to appellant's special plea. Grammer v. State, 239 Ala. 633, 196 So. 268.

Charge No. 10 is clearly misleading and confusing. The legal principle attempted to be stated therein is not correct. Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193.

We have discussed only the salient features disclosed by the record, and we have foregone any treatment of some of the merely technical points presented by it, which in our view do not affect the merits of the case. It is highly probable that the omitted inquiries will not arise on another trial.

For error pointed out, the case must be reversed and remanded. It is so ordered.

Reversed and remanded.