See, also, 34 Ala.App. 305, 39 So.2d 44.

55 So.2d 522

### ECHOLS v. STATE.

8 Div. 907.

Court of Appeals of Alabama.

Aug. 8, 1950.

Rehearing Denied Oct. 31, 1950.

Reversed on Mandate Nov. 27, 1951.

304

S. A. Lynne, of Decatur, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

Under an indictment charging murder in the second degree this appellant has been found guilty of manslaughter in the second degree.

The prosecution grew out of the death of Nella June Maples, a girl 15 years of age, who was struck by a truck while riding a bicycle on or by a highway in Morgan County on 13 October 1947.

Evidence introduced by the State tended to show that Nella June Maples, and her nephew, Ralph Blankenship, were returning to their home around seven o'clock P. M. after visiting relatives. Each was riding a bicycle, proceeding easterly along the highway, and near the south edge. Blankenship was riding about four feet in front of Nella June. The night was dark but Nella June held a burning flashlight in her left hand, and there was a red reflector on the rear of her bicycle.

As to the actual collision, Blankenship testified:

"A. When we left Mrs. Puckett's house, we come on up the road about a quarter of a mile, and I saw the truck coming over the hill, and he was coming pretty fast, and I looked back and he approached up pretty close; and I looked back and I saw he was coming towards us, and I told June to look

out; and I looked where I was going, and about that time he hit her.

"Q. You saw some lights coming over the hill? A. Yes.

"Q. You say you saw the vehicle coming towards you? A. Yes.

"Q. What did you say to June? A. I said: 'Look out, June!'

"Q. At that time, did she have the light on? A. Yes.

"Q. At that time, were you in front of her or in back of her? A. In front.

"Q. At the time you hollered or spoke to her, was she,—how far behind you was she? A. About the same distance; about three or four feet behind me.

"Q. Was she on the highway or off the highway? A. She was off. When we saw this truck coming, we got off.

"Q. Off of the highway? A. Yes, sir.

"Q. And that was on the right-hand side of the highway? A. Yes.

"Q. That is the south side of that highway, isn't it? A. Yes, sir.

"Q. And when you spoke to her, what did you do? A. I turned around and looked where I was going.

"Q. And then what happened? A. The truck hit her."

Immediately after the accident Blankenship was unable to locate Nella June. He went for help. Later she was found fifty feet from her bicycle, about three feet off the pavement, severely injured, and died on the way to the hospital.

Blankenship further testified that in his opinion the truck was going about 40 miles per hour at the time it struck deceased.

Sergeant W. B. Little, and Gordon Griffin, members of the State Highway Patrol, testified that on 15 October they went to appellant's home and examined appellant's truck. They found scratches on the fender which had recently been covered with a greasy substance. One or two hairs were found clinging to the body of the truck. These were later turned over to Mr. C. D. Brooks, Assistant State Toxicologist.

The appellant was taken into custody.

After a proper predicate had been established tending to show its voluntary character, Sergeant Little testified as follows concerning statements made by the accused during the drive into Decatur:

"A. About five miles out on 67, there hadn't been anything said from the time we left the jail until about five miles out, and he leaned over on the back of the seat and asked me did I think they would electrocute him for doing it, and I told him I never knew of them electrocuting any man for that kind of crime. And he said: 'There is no need of going any further. I run over her and killed her.'

"Q. Did he say he was drinking? A. He said 'I was pretty full and I knew you all would be out there, and I couldn't afford for you all to see me in that shape, and I kept going;' said he went on down to Somerville and turned left and went north to his home."

Mr. Brooks, Assistant State Toxicologist, after sufficient establishment of his qualifications, testified that the hairs turned over to him by Patrolman Griffin matched hair turned over to him by the mortician who had prepared deceased for burial, the mortician having testified as to the securing of this hair from the head of deceased.

Mr. Brooks gave further testimony as to the matching qualities of particles of paint he found on appellant's truck, and paint taken from deceased's bicycle.

Further evidence was presented by the State directed toward showing that appellant had stopped at a filling station at around 7 o'clock on the night of this accident, the filling station being about 5 miles west of the scene of the collision. At this time appellant appeared to be drinking; he held onto his truck as he walked around it; talked with a thick tongue; and after paying for his purchase once he attempted to pay a second time.

In his own behalf the appellant testified that he first observed the deceased as she was riding about midway of the highway, and approaching his truck, some sixty feet away. He cut down on his gas, and as he got near the bicycle and rider it turned to his side of the road. He cut to his left, and

not hearing any noise, or feeling any jolt he continued on. Appellant claimed he did not know he had struck the bicycle.

Appellant asserted he was scared and excited when taken into custody by the patrolmen, and would not say whether he had or had not made the statement attributed by them to him. At the trial he maintained he was not under the influence of liquor in any way at the time of the accident, as he had taken only two small swallows of whiskey with acquaintances during the morning.

A witness for the defense testified that he had passed the Maples girl and Blankenship boy shortly before this accident, and when he passed them he did not see any light displayed by either one.

The defense also presented several character witnesses. A number of rulings made by the court during the examination of these witnesses, are, in our opinion, the only rulings on admission or rejection of evidence that invite discussion.

■■ During the cross-examination of defense witness Lyle Cain, who had testified as to appellant's good character and reputation, the record shows the following:

"Q. In your opinion, Mr. Cain, does a man who, by his own admission, drives a motor vehicle in an intoxicated condition on a public highway at night, bear a good reputation?

"Mr. Lynne: We object to that.

"Mr. Shanks: That is within the evidence, and correctly hypothesised.

"Court: Overruled.

"Mr. Lynne: We reserve it.

"A. I wouldn't think so."

The record further shows that during the cross-examination of the very next witness for the defense, C. T. Watkins, likewise a character witness, substantially the identical question was addressed to him as had been asked Mr. Cain, with the following rulings and instructions by the court:

"Q. In your opinion, is a man who, by his own admission, has driven a motor vehicle on a public road at night in an intoxicated condition, such a person that bears a good reputation?

"Mr. Lynne: We object to that question, because it is evasive of the province of the jury; it calls for an opinion about a matter which is controverted, because—

"Court: I am going to sustain it.

"Mr. Shanks: I am asking for an admission by the defendant, which, as I understand, stands undenied and uncontradicted at this point, and which, if it did, I would still be entitled to question about it.

"Court: I am going to sustain it, and rule it out on the other witnesses, too.

"Court: Gentlemen, that isn't evidence."

Questions predicated upon facts developed by State's witnesses, and which could rationally refer only to the accused, are not a proper method of proving reputation, for it is an attempt to show character by particular acts. A character witness' testimony is confined to general reputation of the accused in the community in which he lives. Gray v. State, 21 Ala.App. 409, 108 So. 658; Way v. State, 155 Ala. 52, 46 So. 273; Mullin v. State, 31 Ala.App. 571, 19 So.2d 845, 847; Smith v. State, 25 Ala.App. 79, 141 So. 265.

It appears from the record as shown, supra, that the court excluded the evidence improperly admitted during the examination of Mr. Cain, by its rulings during the examination of Mr. Watkins, and instructed the jury that such testimony was not in evidence. No reversible error therefore resulted from this instance.

■■ The record further shows that during the redirect examination of Mr. Cain he testified he had had connection with many citizens of his and appellant's community by virtue of operating a gin, and knew virtually every one in the east end of the county, and that he had never at any time heard anything against the appellant. This latter portion of Mr. Cain's testimony was excluded on motion of the Solicitor.

Negative evidence of good character, that is that a competent character witness has never heard anything against an accused is, and has been for a long time in this jurisdiction, considered as a highly satisfactory method of proving character and reputation. See Everage v. State, 33 Ala. App. 291, 33 So.2d 23, and cases cited there-

in. Standing alone, the court's ruling in excluding this type of character evidence was erroneous. It appears however that on his main direct examination Mr. Cain had given positive testimony as to appellant's good character and reputation. We cannot see therefore that this appellant was probably injured in his substantial rights by the exclusion of this testimony which sought to establish in a negative fashion the very fact that has already been established by positive testimony.

Counsel further asserts that reversal of this cause should follow because of the following rulings during the cross-examinations of Odie Sharp, and Lester Whitten, respectively, each having testified as character witnesses for appellant:

"Q. Did you ever hear of him driving an automobile upon the highways of Morgan County while he was drinking, prior to October, 1947? A. No, sir; I have heard of him drinking.

"Mr. Lynne: We move to exclude that statement 'heard of him drinking.'

"Court: Sustained.

"Q. Well, did you hear of him drinking—

"Mr. Lynne: We object to that.

"Q. —prior to October, 1947?

"Court: I will overrule that.

"Mr. Lynne: We reserve it.

"A. Yes, sir.

"Mr. Johnson: That's all.

"Mr. Lynne: That's all.

\*     \*     \*     \*     \*

"Q. Did you know his general reputation prior to October, 1947? A. Yes, sir.

"Q. What was his reputation for public drinking, drinking on the highways prior to that time?

"Mr. Lynne: We object.

"Court: Overruled.

"Mr. Lynne: We reserve it.

"A. Well, I have seen him under the influence of it.

"Mr. Lynne: We move to exclude that answer.

"Q. Have you seen him frequently when, in your judgment, he appeared in public and appeared to be under the influence of intoxicating liquors?

"Mr. Lynne: We object.

"Court: Overruled.   •

"Mr. Lynne: We reserve it.

"A. I have seen him,—not so frequently, but I have seen him under the influence of it.

"Mr. Lynne: Move to exclude that answer.

"Court: Overruled.

"Mr. Lynne: We reserve it.

"Mr. Lynne: That's all."

The evidence sought from the witnesses Sharp and Whitten was relative, and of probative force in measuring their competency as character witnesses. Mullins v. State, 31 Ala.App. 571, 19 So.2d 845. The evidence sought was not therefore obnoxious to all rules of evidence. The questions as framed were not in proper form. However, it is to be noted that only general objections were interposed to the questions, and only a general motion to exclude the answer was made. Under such circumstances the trial court will not be put in error for its rulings in the premises. Head v. State, Ala.App., 44 So.2d 441; Walden v. State, 34 Ala.App. 29, 36 So.2d 556; certiorari denied 251 Ala. 144, 36 So.2d 558; Walker v. Jones, 33 Ala.App. 348, 34 So.2d 608; certiorari denied 250 Ala. 396, 34 So. 2d 614; Corsbie v. Poore, 29 Ala.App. 487, 198 So. 268; certiorari denied 240 Ala. 207, 198 So. 272; Helms v. State, 34 Ala. App. 82, 37 So.2d 229; certiorari denied 251 Ala. 275, 37 So.2d 231; Rountree Farm Co. v. Morgan County, 249 Ala. 472, 31 So.2d 346; Slaughter v. Green, 205 Ala. 250, 87 So. 358.

Some twenty charges requested in writing by the appellant were given by the court, while six such charges were refused. No error resulted fom the refusal of these charges. Refused charges Nos. 2, 9, 18, and 21 relate to manslaughter in the first degree, and are rendered abstract by the verdict rendered.

Refused charge 8 is affirmative in nature as to manslaughter in the second degree and

was properly refused under the developed evidence of this case.

■ Refused charge 3 was refused without error because it is not hypothesized on the evidence; it is argumentative and misleading, and invasive of the province of the jury; it assumes facts as to which the evidence is in conflict.

In our opinion this record is free of error probably injurious to the substantial rights of this appellant. This cause is therefore ordered affirmed.

Affirmed.

### On Rehearing.

HARWOOD, Judge.

In his brief in support of his application for rehearing appellant's able counsel argues that we erred in holding that the general objections interposed to the questions propounded to the witnesses Odie Sharp and Lester Whitten were unavailing. Counsel contends that the questions were palpably illegal, and therefore within the exception to the general rule that a ruling invoked by a general objection will not ordinarily cause a reversal of a cause.

Counsel further argues that during the examination of a previous witness for the defense, C. T. Watkins, a ruling was invoked by the defendant to a substantially similar question, the objection interposed in this instance being well grounded, and the point having been ruled on by the court no need arose for stating grounds in support of objections involving this same point made during the examination of the later witnesses Sharp and Whitten.

In this connection the record shows the following rulings during the cross-examination of the defense witness Watkins:

"Q. Mr. Watkins, do you know what Echols' reputation for sobriety is in the community in which he lives?

"Mr. Lynne: We object.

"Court: Overruled.

"Mr. Lynne: We reserve it. That is not a matter that affects a man's moral character.

"A. No, sir.

"Q. Have you ever heard of him being a drinking man?

"Mr. Lynne: We object, on the same grounds; it doesn't go to his credibility.

"Court: Sustained."

■ The State had introduced evidence tending to show that at the time of this unfortunate collision the appellant was under the influence of intoxicants. Appellant's sobriety, or lack thereof, at the time was therefore definitely an issue in this trial. The appellant's trait of character in this regard, after his evidence of good character had been introduced by him, was of probative force. As stated by Coleman, J., in Cauley v. State, 92 Ala. 71, 9 So. 456: "A person on trial for an affray may prove his general good character, or his good character as a peaceable, law-abiding man. In rebuttal, it may be shown that his reputation is that of a quarrelsome, fighting man. If tried for adultery, and the defendant offers in evidence proof of general good character, it may be shown in rebuttal that defendant's reputation for virtue is bad, or that his general reputation is that of a fornicator or an adulterer. This would be in rebuttal, and tend to overcome the presumption of innocence arising from good character."

■■ The ground assigned to the objection interposed to the question asked the witness Watkins was that reputation for sobriety in the community in which appellant lived "is not a matter that affects a man's moral character." This ground was no basis for excluding the evidence sought, since this trait of character was of probative force under the issues below. It did not therefore tend to inform the court of particular vices infecting similar questions asked later. Nor did it inform the court of the vice inherent in the question itself, said vice being that it was not limited to the time preceding the commission of the offense. See Williams v. State (on rehearing), 33 Ala.App. 304, 35 So.2d 562, certiorari denied 250 Ala. 549, 35 So.2d 567.

■ While we did not separate the rulings made during the examinations of the witnesses Sharp and Whitten in our dis-

cussion in our original opinion, we perhaps should have, for it would appear that in so far as the rulings made during the examination of Sharp were correct, in that the questions propounded to this witness were addressed solely to the question of appellant's reputation in regard to drinking, and driving while drinking, the evidence sought thereby being admissible under the issues made, and as tending to test Sharp's competency as a character witness. Mullins v. State, supra; Cauley v. State, supra.

█ As to the rulings made during the examination of the witness Whitten, it is clear from the excerpt of the testimony set forth in the opinion that the ultimate evidence sought was the appellant's proclivities toward drinking, and drinking on the highways.

This evidence was of probative force in rebutting appellant's evidence of good character in view of one of the developed issues of this case, namely whether he was under the influence of intoxicants at the time of this collision.

The first questions addressed to Whitten, as shown in the excerpt in the opinion, were correct in form to elicit this information, and the court's rulings thereon were in our opinion free of error.

██ However, the Solicitor then, in an apparent attempt to show the frequency of appellant's appearances under the influence of alcohol then asked Whitten if he had *seen* appellant frequently, when, in witness' judgment he appeared in public under the influence of alcohol, etc.

This question of course violated the hornbook rule of evidence that character cannot be proven by specific acts.

Had the Solicitor so framed his question as to ask if the witness had *heard* that prior to the date of the collision the appellant was frequently under the influence, etc., such question would in our opinion have been a proper one.

█ As before stated, only a general objection was interposed to the question.

If only a general objection is interposed, or only general grounds are assigned in support of an objection, no error results in overruling such objection unless the evidence sought is illegal for any purpose and cannot be made legal by other evidence, *or by otherwise framing the question*. Louisville and Nashville R. R. Co. v. Scott, 232 Ala. 284, 167 So. 572. Unless the objection particularizes the defect in the question neither the interrogator, nor the court, is apprised of a defect that may be latent therein, and no opportunity is afforded to correct such defect by otherwise framing the question. Walker v. Jones, 33 Ala.App. 348, 34 So.2d 608; Head v. State, Ala.App., 44 So.2d 441.

The evidence sought in this case, i. e. the appellant's proclivities toward indulging in drink, was not obnoxious to all rules of evidence. It was, in fact, of probative value under the issues made.

The form used by the Solicitor in seeking to elicit this evidence was defective.

In Prouty Lumber and Box Co. v. Cogan, 101 Or. 382, 200 P. 905, 907, the Supreme Court of Oregon has stated the rule as to the sufficiency of general objections in the following clear manner: "The general rule that objections to evidence must be specific admits of this exception: That if they cannot in any manner be obviated, or if the evidence is clearly inadmissible for any purpose, a general objection will suffice."

█ The vice in the question now under consideration could easily have been obviated by merely framing the question on a "heard" basis, rather than on the "seen" basis as it was framed. The ultimate fact sought, that is the defendant's proclivity to drink, being of probative value in this case, and it being easily possible to have obviated the defect in the question seeking such evidence by reforming the question, we adhere to our former conclusion that the trial court should not be put in error because of its ruling in this premise.

Other points are argued in appellant's brief in support of his application for rehearing. We have in our opinion already sufficiently discussed these points in our

original opinion, and therefore refrain from further discussion of them.

Application denied.

CARR, J., concurs in the conclusion.

PER CURIAM.

Reversed and remanded on authority of Echols v. State, 256 Ala. 389, 55 So.2d 530.