93 So.2d 804

**Hamilton Green JACKSON**

**v.**

**STATE.**

**6 Div. 129.**

Court of Appeals of Alabama.

June 19, 1956.

Rehearing Denied Aug. 14, 1956.

J. Edmund Odum, Birmingham, for appellant.

John Patterson, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and George Young, of counsel, for the State.

Ward & Ward and deGraffenried, de-Graffenried & deGraffenried, Tuscaloosa, for appellant.

John Patterson, Atty. Gen., and J. Noel Baker, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Under an indictment charging this appellant with the murder, in the first degree, of his wife, this appellant's jury trial resulted in a verdict and judgment of guilty of manslaughter in the second degree.

In response to a call from the appellant police officers of the City of Tuscaloosa went to the home of the appellant. There they found appellant's wife lying on the floor of the living room with a mortal pistol shot wound in her head.

The appellant was taken to police headquarters where he made a statement to the officers.

The material portions of this statement were to the effect that he had gotten out of bed about eight that morning. His wife did not arise until about an hour later. The two took one or two drinks of gin. She then proceeded to call a friend over the telephone. The appellant, during this telephone conversation went into his bedroom and picked up a pistol he kept therein, and returned to where his wife was talking. According to the appellant's statement, given to the police in question and answer form, the following then occurred:

"Q. What did you tell her about the gun? A. I just told her to get up and fix me some breakfast or I am going to beat you on the head.

"Q. What did you tell her you would beat her with? A. With this pistol, and she said I ain't scared of you I will take it away from you."

His wife then grabbed for the gun, and in the ensuing scuffle the pistol fired.

The appellant further stated that he was 68 years old, 5 feet 7 inches in height, and weighed 130 pounds, while his wife was 49 years old, 5 feet 8 inches tall, weighed around 165 pounds, and was the stronger of the two.

He further stated that on several previous occasions his wife had gotten the pistol and he had had to take it away from her.

It was appellant's further contention in this statement that he did not intentionally fire the pistol, but that it went off accidentally; that he was sober at the time, and there had been no quarrel between him and his wife that morning.

For the defense Willie Montgomery testified that he delivered milk and vegetables at appellant's around 9:30 or 10:00 A.M. on the morning in question. At that time the couple appeared in good humor, and Montgomery took a drink of gin at the wife's invitation.

In his own behalf the appellant testified substantially to the facts contained in the statement given to the police, except that he contended that when he returned with the pistol he told his wife he might hit her with the pistol if she did not fix his breakfast.

He further testified that he and his wife were on their knees when the pistol fired, whereas in his statement to the police he had said they were standing at the time.

The defense also presented a large number of character witnesses who testified to the good reputation of the appellant.

In rebuttal the State presented a police officer who testified to the effect that ap-

pellant's general reputation, and his reputation for peace and quiet were both bad.

Counsel for appellant contend that the lower court erred in refusing appellant's request for the affirmative charge, and in denying his motion for a new trial, on the grounds that the evidence is insufficient to support the verdict, or was contrary to the weight of the evidence.

■■ We think that the most satisfactory definition of manslaughter in the second degree is that manslaughter in the second degree " 'is where it plainly appears that neither death nor great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act strictly lawful in itself, but done in an unlawful manner, and without due caution.' " Williams v. State, 83 Ala. 16, 3 So. 616, 617; Williams v. State, 251 Ala. 397, 39 So.2d 37. "Without due caution" is synonymous with " 'without due care'." Rutledge v. State, 36 Ala.App. 457, 60 So.2d 360, 362.

■ In his statement to the police shortly after the killing this appellant in substance told them that when he walked to where his wife was talking over the phone he had told her that if she did not fix his breakfast he was going to beat her on the head. He then held a pistol in his hand. While the appellant contends that he made the statement in a jocular fashion, we think it within the province of the jury under all the evidence, to conclude otherwise. Under such view the appellant must be deemed to have committed an assault upon the deceased, an unlawful act, which act caused the deceased's death.

Further, it was within the province of the jury to determine whether the appellant had acted with due caution, or due care, under the circumstances even if his act in handling the pistol be deemed lawful.

The court therefore ruled correctly in the above instances.

As before stated, the appellant presented a large number of character witnesses. During the cross-examination of several of these witnesses questions were addressed to each as to whether they had heard prior to the date of this offense, that the appellant had been arrested by the police of the City of Tuscaloosa on 8 July 1939 and charged with assault and battery and disorderly conduct; or that he had been arrested and convicted of driving while intoxicated; or that he had been arrested and convicted of drunkenness.

The court overruled objections to all such questions. In every instance, except one, the witnesses replied in the negative. In the case of the one exception the witness replied to the question of whether he had heard of the arrest and conviction for drunkenness, that he had heard that appellant had gotten into trouble one time for getting drunk.

■ It is permissible to cross-examine a character witness if he has not heard of unworthy acts committed by the accused. Such evidence being for the purpose of throwing light on the credibility of the witness, and his competency to measure reputation. Mullins v. State, 31 Ala.App. 571, 19 So.2d 845.

■ The questions were properly framed to meet the requirements of our decisions in this regard.

It has been specifically held that it was proper to inquire of a character witness on cross-examination if he had heard of accused's conviction of violating the liquor laws, Osborn v. State, 32 Ala.App. 105, 22 So.2d 538, and whether such witness had heard of accused's arrest for driving while drunk. Johnson v. State, 34 Ala.App. 623, 43 So.2d 424. We see no reason why a character witness should not be examined as to whether he had heard that the accused had been arrested and convicted of drunkenness.

■ Furthermore, in every instance except the one above noted, the witnesses stated they had not heard of the behavior inquired about. Such negative answers removed the possibility of injury. Jackson v. State, 35 Ala.App. 542, 50 So.2d 282; Driggers v. State, 36 Ala.App. 637, 61

So.2d 865; Shouse v. State, 36 Ala.App. 614, 63 So.2d 722; Dixon v. State, Ala. App., ante, p. 395, 85 So.2d 156.

Counsel further contend that the lower court erred in refusing appellant's written requested charge A–1, which is as follows:

"I charge you, Gentlemen of the Jury, that unless you are convinced by the evidence beyond a reasonable doubt that the killing was not the result of a mere accident you cannot convict the defendant."

■ The principle sought to be enunciated in this charge was substantially covered in charge 55 given at appellant's request, and in the court's oral charge, wherein, after reviewing the defendant's contentions, the court instructed the jury:

"* * * and that through their scuffle over the pistol, done without any malice or madness on either part, the gun went off accidentally and accidentally shot his wife and killed her; and the defendant claims there was no willful killing, there was no unlawful killing, there was no intention to kill anybody. And, of course, if it was like the defendant claims it is, the defendant is not guilty of anything."

■ Further, we think the charge was refused without error in that it is misleading in its tendencies. In manslaughter in the second degree the killing is always accidental in that it is unintentional. The adjective "mere" before the word "accident" in the charge is epithetical in nature and adds nothing. The appellant's legal responsibility must be determined not by whether the killing was accidental, but rather whether the death was caused by doing a lawful act in a negligent manner, or in the doing of an unlawful act. This standard of liability was lacking in the charge, and such omission was likely to mislead and confuse the jury.

Affirmed.

## On Rehearing

In their brief in support of appellant's application for rehearing, counsel for ap-pellant insist that the court's refusal of requested charge 1 constituted error, and for this reason a rehearing should be granted, and the judgment reversed.

Refused charge 1 is as follows:

"The Court charges the Jury that the fact that Hamilton Green Jackson, the defendant, is accused of murder, and the fact that the Grand Jury found an indictment against him in this case, are not facts or circumstances to which you are allowed to look in this case in considering the case, and I charge you that the indictment is neither a circumstance in law or fact showing or tending to show that the defendant is guilty of the charge."

Counsel rely particularly upon Salter v. State, 22 Ala.App. 86, 112 So. 538, also cite Prater v. State, 193 Ala. 40, 69 So. 539.

We find nothing in the Prater case, supra, tending to support counsel's position.

In the Salter case, supra [22 Ala.App. 86, 112 So. 539], the court held that the refusal of the following charge was error:

"'(18) The court charges the jury that the indictment in this case is not any evidence in the case, and the fact that defendant has been indicted is not to be considered by you as a circumstance against him, but said indictment is merely the method of placing defendant on his trial, but the presumption of innocence attends the defendant throughout this trial and remains with him and authorizes an acquittal, if the entire testimony fails to overcome said presumption, by proof of defendant's guilt beyond a reasonable doubt.'"

However, a reading of the opinion indicates that the basis of error growing out of the refusal of this charge was that an accused is entitled to have the jury instructed as to the presumption of innocence attending him upon trial.

Such was the treatment of the charge in Bush v. State, 23 Ala.App. 502, 127 So. 909, 910, reference being made to the Salter

case, supra. The court held that the law as to presumption of innocence having been adequately covered in the court's oral charge, it was not error to refuse the charge. The court stated further "So far as the first part of said refused charge 12 is concerned, dealing with the 'non-evidentiary' value of the returning of the indictment against appellant (defendant), it is sufficient to say that this form of instruction has been condemned by our Supreme Court, as being no more than an argument. Morris v. State, 146 Ala. 66, 41 So. 274." To the same effect is Crenshaw v. State, 153 Ala. 5, 45 So. 631; Pelham v. State, 24 Ala.App. 330, 134 So. 888; Woodard v. State, 253 Ala. 259, 44 So.2d 241; Jones v. State, 260 Ala. 341, 70 So.2d 629.

In the present case, the court having fully and amply covered the law as to the presumption of innocence clothing the appellant, no error resulted in the refusal of charge 1.

Other matters are argued in counsel's brief. The points were, we think, dealt with in our original opinion.

Application overruled.