## Gaugh v. Commonwealth.
(Decided Oct. 30, 1935.)

92

R. L. BRONAUGH and LESLIE W. MORRIS for appellant.

BAILEY P. WOOTTON, Attorney General, RAY L. MURPHY and H. HAMILTON RICE, Assistant Attorneys General, and G. MURRAY SMITH, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

J. L. Gaugh has been convicted of the crime of re-

ceiving and assenting to the receiving of a deposit by the Wilmore Deposit Bank while he was acting as its cashier and after he had knowledge of the fact that it was insolvent, and his punishment fixed at imprisonment for two years. He is appealing.

A number of grounds are urged for reversal, but because the judgment must be reversed for reasons which will presently appear it will be unnecessary to enter into an extended discussion of all the grounds, since many of them will not likely occur in the event of another trial.

It is first urged that the demurrer to the indictment should have been sustained because it did not specifically allege that the deposit was received by the Wilmore Deposit Bank, but this contention cannot be sustained since the indictment in this and all other respects was sufficient and fully apprised the accused of the particular offense with which he was charged.

The alleged error of the court in refusing to grant a new trial on the ground of newly discovered evidence will not likely occur in the event of another trial, yet it might properly be noted in passing that no error was committed in this particular, since appellant did not file his own affidavit showing that he did not know, and by reasonable diligence could not have known, of the existence of the alleged newly discovered evidence, or that he had exercised reasonable diligence in that respect. Burnett v. Commonwealth, 249 Ky. 112, 60 S. W. (2d) 342. On the other hand, the record discloses that by the exercise of diligence he could have discovered before the close of the trial all he claims to have discovered thereafter concerning the statements of the newly discovered witness.

It is most earnestly argued that the court erred in refusing to admonish the jury as to the purpose for which testimony showing withdrawals of money by appellant from the bank on the day the deposit in question was received. Margaret Harris, who was a bookkeeper for the bank on the 25th day of March, 1933, testified that on that day appellant by various checks withdrew from the bank cash in sums aggregating over $1,300. Appellant in his testimony admitted making these withdrawals, but in explaining his conduct testified that at the close of business on that day

he realized that by reason of heavy withdrawals on the part of depositors it would be necessary for the bank to go back on a restricted basis, and that on account of some pressing obligations he made such withdrawals with the expectation of redepositing the money in the bank when it reopened on a restricted basis. Defendant moved the court to admonish the jury that this evidence was admitted for the purpose of showing, if it did show, that defendant on the 25th day of March, 1933, had knowledge of the fact that the bank was at that time insolvent, if it was insolvent, and should not be considered by the jury as evidence of the insolvency of the bank at the time. Clearly, this evidence was admissible as bearing on the question of the insolvency of the bank as well as upon appellant's knowledge of such condition, and the court did not err in refusing an admonition to limit its effect.

It is further urged that there was no competent evidence showing the assets and liabilities of the bank because the original books of the bank were not introduced in evidence. A witness who made an audit of the books testified concerning the assets and liabilities of the bank as appear from the statement of his audit. While it does not appear that the books of the bank were offered or filed in evidence, it does appear that the books were in court and were referred to by appellant and other witnesses while testifying; and in this connection it may be said concerning the insistence that the court erred in permitting the commonwealth to cross-examine appellant as to the condition of the books of the bank without permitting him to examine them, that at one place in the cross-examination appellant when asked about certain matters indicated that it would be necessary for him to have the books and that he would like to see them before answering the question, yet there was no demand or request that the books be produced, and as a matter of fact his evidence later on indicated that he had the records before him. Unquestionably, on all matters concerning the records of the bank, appellant was entitled to have the books themselves produced, but it does not appear that this was refused him.

It is also argued that the evidence of C. M. Metcalfe concerning value of the assets of the bank was incompetent because it was not shown that the witness was qualified to give an opinion concerning the

value of the assets. This witness was interrogated at length concerning his knowledge and experience in such matters, and after hearing this evidence we think the court properly permitted him to testify.

It is argued at length that the instructions given were erroneous, but in instructing the jury the court followed instructions given in Parrish v. Commonwealth, 136 Ky. 77, 123 S. W. 339, which were approved by this court and have served as a model for instructions in cases of this character. The instructions fairly and properly submitted the issues to the jury.

It is further urged that the finding of the jury that the bank was insolvent does not find sufficient support in evidence. Evidence concerning financial difficulties encountered and readjustments made before the bank finally closed, coupled with evidence for the commonwealth concerning the value of the assets of the bank at the time it did close, clearly tends to indicate that it was insolvent within the meaning of the law; however, there was much evidence pointing the other way. In such circumstances it was for the jury to determine the credibility of the witnesses and the weight to be given their evidence, and without entering into a detailed discussion it is apparent that the court would not be authorized to set aside the verdict on the ground that it is flagrantly against the weight of the evidence.

When we come to a consideration of other evidence called in question a more serious question is presented. Appellant complains that C. W. Mitchell, J. J. Allender, and W. G. Compher were permitted to testify that on the 25th day of March, 1933, which was the last day the bank was open for business before it went into the hands of the banking commissioner, they each made deposits, and that they had not been paid the sums so deposited or any part thereof. The deposit made by Mitchell is the one upon which the indictment is based, and unquestionably it was competent for him to testify that he made it. No objection was made to the evidence of any of the witnesses that they made a deposit in the bank on that date, but objection was made to the evidence of Compher that he had never gotten the money he deposited, or any part of it.

In the case of Parrish v. Commonwealth, supra, it was held that in the prosecution of an officer of a bank

for receiving a deposit with knowledge of the bank's insolvency under section 597, Kentucky Statutes, the person who actually received the deposit, the position he held in the bank, or the individual who made the deposit, was not material, but in Commonwealth v. Croft, 208 Ky. 220, 270 S. W. 816, it was held that each separate act in receiving a deposit in such circumstances was a separate offense. There is a general rule that in the trial of criminal cases evidence concerning offenses other than that for which the accused is being tried should not be admitted. There are equally well-recognized exceptions to this general rule which are clearly set out in the case of Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724. These deposits were separate and distinct transactions, and it is to be doubted if evidence of deposits other than that specified in the indictment comes within any of the exceptions set out in the Sneed Case. In any event, however, we are not prepared to say that the admission of the evidence as to other deposits made constituted prejudicial error, since there is no contention that the bank was not open on that date for general banking business, including the receiving of deposits; but the evidence that these witnesses had not been paid their deposits or any part thereof was, in the circumstances, incompetent. In the Parrish Case, supra, as in this case, evidence that depositors were not permitted to withdraw their deposits or that the officers of the bank tried to dissuade them from withdrawing their deposits was admitted, and the Parrish Case indicates that such evidence is competent, and the reason for such holding is at once apparent. Here, however, there is no showing that Compher, Allender, or Mitchell desired or attempted to withdraw their deposits before the bank went into the hands of the banking commissioner, or the officers of the bank dissuaded or in any way prevented them from so doing.

The witness Metcalfe was permitted to testify concerning his investigation to determine the value of the assets of the bank and to give his opinion concerning the value thereof on March 25, 1933. On cross-examination the witness was asked what certain assets were worth at the time of the trial. Over objection interposed by the commonwealth the witness was permitted to answer the question, but the court indicated in an admonition to the jury that the question to be determined was whether the bank was solvent or insolvent on

March 25, 1933, and that the evidence would only be considered "as affecting the credence which the witness gives to the value of this paper and not for the purpose of affecting the question as to whether or not the bank was solvent or insolvent at that time." In the course of the admonition the court stated to the jury that he would eventually give them an instruction as to what insolvency means, and read to them the following as the instruction that would be given on the question:

"A bank is insolvent when it cannot meet its demands in the ordinary course of its business."

The court inadvertently omitted a part of the instruction which as finally given reads:

"A bank is 'insolvent' within the meaning of these instructions when its property and assets are of such character and value that it cannot meet its demands in the ordinary course of its business."

This instruction was proper, and, as already indicated, was approved in the Parrish Case. The question then to be determined by the jury was whether the property and assets of the bank were of such character and value on March 25, 1933, that it could not meet its demands in the ordinary course of business. These deposits were demands against the bank, but it was not a question as to whether the depositor had actually been paid, but whether the property and assets of the bank were of such character and value as would meet these and other demands in the ordinary course of business. Notwithstanding the propriety of the instructions finally given to the jury, it is easy to see how, in the light of the admonition given by the court, they might have concluded that, because these deposits had not been paid, the bank was insolvent.

The witnesses Mitchell and Allender and others responding to questions propounded by counsel for appellant testified that the general reputation of appellant for honesty and integrity on and prior to March 25, 1933, was good. The attorney for the commonwealth, after Mr. Allender had testified that the reputation of appellant for honesty and integrity was good, asked the following question:

"If you had known that afternoon that just before he took your little deposit, he and his assistant cashier took from the bank in cash $2,637.00 do you think that would have been your opinion, or would

ever have been as to his reputation for honesty in that community?"

The witness over objection of appellant was required to answer, and replied, "I don't believe I would have made the deposit." He was further asked:

"I asked you if you had known and the people among whom he associated had known that on that afternoon he and his assistant cashier had checked out of the bank that much money and the fact that they did not open the bank for business any more, do you think that would have affected the people of that community, as to his morals?"

Over objection of appellant, the witness was required to answer, and replied, "Yes sir." Other witnesses who testified to the good character and reputation of appellant were, over objections, permitted to answer similar questions.

While the law invests every person standing accused of crime with the presumption of good character, he may elect to cast aside this protecting shield and attempt to show his good character by affirmative evidence. Under modern rules of evidence, in all criminal cases, whether at common law or under the statute, it is relevant for the defendant to offer affirmative evidence of reputation, with regard to the trait involved in the nature of the charge, to prove that it was unlikely that he would have committed the act charged against him. Wharton's Crim. Ev. (11th Ed.) vol. 1, sec. 330; Denton v. Commonwealth, 188 Ky. 30, 221 S. W. 202. If he so elects he opens the way for the commonwealth to introduce evidence in an attempt to show his bad reputation. Lockard v. Commonwealth, 87 Ky. 201, 8 S. W. 266; Shell v. Commonwealth, 245 Ky. 223, 53 S. W. (2d) 524. When the way is thus opened, the information, accuracy, and candor of character witnesses offered by the accused may be tested on cross-examination by inquiring of them concerning conflicting opinions of persons on the same subject or concerning reports and rumors in the community imputing particular acts or offenses to him. Fugate v. Commonwealth, 211 Ky. 700, 277 S. W. 1029. It is a general rule, however, that such evidence is confined to the reputation of accused at or prior to the alleged commission of the crime. Combs v. Commonwealth, 160 Ky. 386, 169 S. W. 879.

Unless the bank was insolvent at the time and appellant had knowledge of that fact when he withdrew funds deposited to his credit on the 25th day of March, 1933, no question of wrongdoing or moral turpitude was involved in his act in so doing.

The purpose of the prosecution was to show that the bank was insolvent and appellant had knowledge of that fact when he received Mitchell's deposit, and as bearing on the question of his knowledge the most damaging evidence against him was that concerning his withdrawals from the bank on the day the deposit was received. Permitting the commonwealth to pursue the line of interrogation as above indicated on the cross-examination of character witnesses not only served to magnify this evidence, but to use it as a weapon to utterly destroy the evidence showing his previous good reputation as to honesty and integrity. No case has been pointed out by counsel for the commonwealth, and we have found none, indicating that in the cross-examination of a character witness he may be asked concerning the particular offense of which the accused is charged or about acts in evidence to establish his guilt in an effort to impeach or break down evidence concerning his previous good reputation. This line of interrogation was in effect presupposing appellant's guilt and was asking the witnesses what the effect would have been upon their opinion and the opinion of the people among whom appellant associated if they had known that he committed the offense charged in the indictment. Our conclusion is that it was both incompetent and prejudicial. Ordinarily, no great importance is attached to the evidence of character witnesses, but where, as in this instance, there is a sharp conflict in evidence and the balance might easily turn either way, this and other incompetent evidence to which we have referred cannot be treated lightly. Viewing the record as a whole, we are constrained to hold that the admission of the incompetent evidence above indicated was prejudicial.

Wherefore, the judgment is reversed and cause remanded for a new trial and proceedings consistent with this opinion.