**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Quinn L. POLSINELLI,**
**Defendant-Appellant.**

**No. 80–1665.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 17, 1981.

Rehearing Denied July 13, 1981.

John Oliver Martin, Asst. U.S. Atty. Kansas City, Kan. (James P. Buchele, U.S. Atty., Kansas City, Kan., with him on brief), for plaintiff-appellee.

Laurence M. Jarvis of the Firm of Laurence M. Jarvis, Chartered, Kansas City, Kan., for defendant-appellant.

Before McWILLIAMS, BARRETT and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

Quinn L. Polsinelli was convicted by a jury of conspiring from about April 1, 1979, to April 30, 1979, with Daniel P. McFarland to distribute cocaine, a Schedule II narcotic drug, in violation of 21 U.S.C. § 846 (1976). He was also convicted of distributing cocaine on April 30, 1979, in violation of 21 U.S.C. § 841(a)(1) (1976) and 18 U.S.C. § 2 (1976). Polsinelli was acquitted on Count 2 of the indictment, which charged him with distributing cocaine on April 18, 1979. Polsinelli appeals.

The indictment jointly charged Polsinelli and McFarland. After plea bargaining, McFarland pled guilty to Count 3 in the indictment, i. e., the April 30 transaction, and the remaining two counts were dismissed. Sentencing of McFarland was delayed until after Polsinelli's trial. At the latter's trial, McFarland was the key Government witness. McFarland testified that on the two occasions charged in the indictment he sold an ounce of cocaine to an undercover Drug Enforcement Administration (DEA) Agent and that in each instance he acquired the cocaine from Polsinelli, and, in turn, sold it to the undercover agent.[1]

Polsinelli testified in his own defense, and admitted the contacts between himself and McFarland on both April 18 and 30, 1979. He denied, however, that he ever delivered any cocaine to McFarland. Other DEA agents and a Kansas City, Missouri, policeman conducted a surveillance of McFarland and Polsinelli on the dates in question and they confirmed the contacts between the two. There was, however, no corroborating evidence as to what transpired between Polsinelli and McFarland during such contacts. So, on the critical issue of whether McFarland acquired the cocaine from Polsinelli, it was a one-on-one situation, that is, McFarland testified he acquired the cocaine for both the April 18 and 30 sales from Polsinelli, with the latter unequivocally denying that he gave cocaine to McFarland.

Counsel for Polsinelli called three character witnesses, a Catholic priest, a long-time family friend, and Polsinelli's 86-year-old grandmother. There was no cross-examination of the grandmother. Polsinelli's primary ground for reversal relates to the Government's cross-examination of the priest and the family friend.

The direct examination of the priest and the family friend was quite similar. Defense counsel asked the witness if he, or she in the case of the family friend, knew of Polsinelli's community reputation for honesty, truthfulness, veracity, and integrity. Both indicated that they did, and described his community reputation as being good or very good.

On cross-examination of the priest, the prosecutor, over objection, was allowed to ask the witness if his opinion would be changed "if you became aware that Mr. Polsinelli had on at least two occasions distributed ounce quantities of cocaine." In the context in which the question was propounded, the prosecutor was obviously referring to the alleged distributions on April 18 and 30, the charges for which Polsinelli was standing trial. The priest indicated that his opinion would not be altered.[2]

---

1. At one point in his testimony, McFarland indicated some doubt as to who supplied him the cocaine for the April 18 sale. McFarland stated: "I think I got it [the cocaine] from Quinn [Polsinelli, the defendant]. I think it was from Quinn but it could have been Jerry [Polsinelli, the defendant's brother]. It was either one of them."

2. The pertinent portion of the prosecutor's cross-examination was as follows:

Q. Father Tobin, would your opinion that you have just given change if you became aware that Mr. Polsinelli had on at least two occasions distributed ounce quantities of cocaine?

In cross-examining the long-time family friend, the prosecutor was a bit more specific. He asked the family friend if her opinion would be changed if she "knew that on at least two occasions during April of 1979 he [Polsinelli] distributed one ounce quantities of cocaine." This witness, in response, said her opinion would remain the same "always." [3]

Although counsel advances several grounds for reversal, the primary ground concerns the prosecutor's cross-examination of the Catholic priest and the long-time family friend. Counsel argues that it was prejudicial error to permit the Government to propound questions which assumed, as a fact, that Polsinelli was guilty of the very offenses for which he was then on trial. According to counsel, the use of such questions tends to usurp the jury's function to determine for itself whether Polsinelli is guilty or not guilty of the crimes charged. We are of the view that the questions thus propounded to Polsinelli's character witnesses were improper in form.

Fed.R.Evid. 405(a) provides that in cases "in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." That same rule further states: "On cross-examination, inquiry is allowable into relevant specific instances of conduct." The issue before us, therefore, narrows to a determination as to whether the provision of the rule which allows, on cross-examination, inquiry into "specific instances of conduct" permits the cross-examining questions propounded here, which, as indicated, were so framed as to assume that Polsinelli was, in fact, guilty of the offenses for which he was then on trial.

Prior to the adoption of the present Federal Rules of Evidence, a character witness in a criminal proceeding was, in general, limited to testimony concerning defendant's community reputation. The witness was not allowed to express a personal opinion of defendant's character, no matter how close or long his association with the defendant. Fed.R.Evid. 405 changed the rule by allowing a character witness, once qualified, to express his personal opinion of defendant's character, even though such witness might be unacquainted with defendant's community reputation. This distinction between community reputation and personal opinion as to character has been deemed of some importance by other courts which have considered the question now before us. Before reviewing those authorities, we should first ascertain the precise nature of counsel's *direct* examination of the character witnesses.

MR. JARVIS [Defense counsel]: Your Honor, I object to the form of the question. That is what we are here about here. There is no way he could have heard that.

THE COURT: This is cross-examination. He may answer, if he can.

THE WITNESS: I'm sorry, I didn't hear you, sir.

THE COURT: I say, you may answer, if you can.

MR. JARVIS: If Your Honor please, for the record, I think the form of the question should be that he has been charged with those, not that he has done it.

THE COURT: This is cross-examination. It is a proper question.

MR. MARTIN [The prosecutor]: I will rephrase it, if you like, Father.

Q. (By Mr. Martin) Father Tobin, would your opinion that you have just given be any different if you were aware that Quinn Polsinelli had on at least two occasions distributed ounce quantities of cocaine?

A. No, it would not.

Q. Your opinion of him would remain the same, whether that act was committed or not?

A. Right.

3. The pertinent portion of the prosecutor's cross-examination was as follows:

Q. And, Mrs. Trinastich, could you tell us whether or not your opinion about Mr. Polsinelli would change if you knew that on at least two occasions during April of 1979 he distributed one ounce quantities of cocaine?

MR. JARVIS: I object to the form of the question.

THE COURT: Overruled.

THE WITNESS: You mean if my feeling would change against Quinn?

Q. (By Mr. Martin) Yes.

A. No.

Q. And your opinion would remain the same?

A. Always.

Q. He comes from an awful good family, doesn't he?

A. You better believe it, really.

Our study of the transcript leads us to conclude that, on direct examination of the priest and the family friend, defense counsel merely elicited their understanding of Polsinelli's community reputation, and that neither witness expressed a personal opinion of Polsinelli's character. In this regard, the Government points out that the questions propounded by defense counsel in his direct examination of the priest and the family friend did contain the word "opinion." This observation is quite correct. However, in context, it is crystal clear to us that the "opinion" elicited related only to community reputation.[4] For example, the priest, on direct examination, was asked whether he had an "opinion about the reputation in the community of Quinn Polsinelli." Similarly, the family friend, on direct examination, was asked her "opinion about Quinn Polsinelli's reputation in the community." Although we are not certain that the distinction thus drawn is of significance, we are certain that, in the instant case, defense counsel, on direct examination, limited his inquiry to Polsinelli's community reputation, and that neither witness expressed a personal opinion as to Polsinelli's character. In thus concluding, we reject the Government's premise that the priest and family friend expressed personal opinions of Polsinelli's character. The Government advocated this position in an effort to distinguish the present case from other cases in which courts found questions to be improper which were less offensive than those used here.

In *United States v. Candelaria-Gonzalez,* 547 F.2d 291 (5th Cir. 1977), the defendant's character witnesses testified as to his general reputation for truth and veracity. On cross-examination, the Government, over objection, was allowed to inquire as to whether the witness thought defendant's general reputation would be affected *if* the defendant were convicted of the crimes for which he was on trial. On appeal, while recognizing the wide latitude allowed in cross-examination of a character witness,

the Fifth Circuit held that the cross-examination of defendant's character witnesses was grossly prejudicial and commented as follows:

The nature of the questions .... was a far cry from any concept of formulated community opinion. Rather, the questions posed sought speculative responses resting upon an assumption of guilt. Government counsel asked if Ledesma's reputation *would* be affected *if* he *were* convicted of the alleged crime. These hypothetical questions struck at the very heart of the presumption of innocence which is fundamental to Anglo-Saxon concepts of fair trial. *See Gomila v. United States,* 5 Cir. 1944, 146 F.2d 372; *Little v. United States,* 8 Cir. 1937, 93 F.2d 401, 408. We think that the risk of prejudice to defendant's basic rights from such questions requires reversal. The questions put have have no place in a criminal trial. *Id.* at 294.

*United States v. Palmere,* 578 F.2d 105 (5th Cir. 1978), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1026, 59 L.Ed.2d 77 (1979), merits consideration, as the Government suggests that *Palmere* weakens *Candelaria-Gonzalez.* In *Palmere,* the Government asked a character witness if his opinion of defendant's reputation would be changed if he knew that defendant had smuggled cocaine into the country, which was the crime for which he was then on trial. No objection was made to the propriety of that question, and on appeal the Fifth Circuit held that the one asking of the question did not constitute plain error. In thus holding, the Fifth Circuit emphasized that in *Palmere* there was only "one asking," as opposed to *Candelaria-Gonzalez,* where the question was put to several of the defendant's character witnesses, over strenuous objection. 578 F.2d at 107. *Palmere* did not overrule, or disavow, *Candelaria-Gonzalez.*

In *United States v. Morgan,* 554 F.2d 31 (2nd Cir.), *cert. denied,* 434 U.S. 965, 98

---

4. In this regard we note that although the priest testified that he was well acquainted with Polsinelli's current community reputation,

he had not actually seen Polsinelli for four to six years.

S.Ct. 504, 54 L.Ed.2d 450 (1977), the defendant's character witnesses testified not only as to defendant's community reputation, but also expressed their favorable personal opinions as to defendant's character. On cross-examination, the Government was allowed to inquire as to whether the character witnesses' personal opinions would be changed if they knew that the defendant was aware that a certain corporation was in receivership and had not disclosed that fact to others. Such inquiry was directly related to the charges for which defendant was then on trial. On appeal, the Second Circuit affirmed, and held that the cross-examination was not prejudicially improper, emphasizing that the defendant's character witnesses had not limited their testimony to community reputation, but had expressed personal opinions concerning defendant's character. It is worthy to note that, although affirming, the Second Circuit at the same time stated that, insofar as "non-expert character witnesses" are concerned, which is what we have in the instant case, the question "should not be asked." F.2d at 34.

In a concurring opinion in *Morgan*, Judge Mansfield zeroed in on the entire matter with the following pertinent comment:

> I concur in Judge Van Graafeiland's well-reasoned opinion. In addition, I believe that the questions put by the prosecutor to the character witnesses were improper because they asked the jury to assume the defendant to be guilty of the very charge on trial, i. e., that he sold stock to his customers without disclosing that the company was in receivership. Since character evidence is admitted only as bearing upon guilt or innocence, an opinion based upon the assumption that the defendant is guilty cannot have any probative value in deciding that issue. However, in the absence of any showing of prejudice, the error was harmless in the present case. 554 F.2d at 34.

A number of the state courts which have considered the present problem have also reversed.[5] One case that merits passing reference is *Chiles v. State*, 26 Ala.App. 358, 159 So. 700 (1935). There the defendant was charged with the theft of two bales of cotton. A character witness described the defendant's character as "good." On cross-examination, the solicitor was permitted to propound the following question: "Would you tell this jury that a man that is a cotton thief is a man of good character?" In holding that this question was both improper and highly prejudicial, the Alabama Court made the following comment:

> The estimate of the solicitor as to the accused should not be injected into a case in this manner, for the fundamental law provides and guarantees to every person on trial charged with a criminal offense, a fair and impartial trial, and however strong the solicitor may have been in his belief that the accused was a cotton thief, such belief on his part should not be permitted to go to the jury as was here allowed. In this case, as in all criminal cases, the accused was presumed to be innocent, and this presumption attended him throughout the trial, as a matter of evidence, or until overcome by evidence sufficient to satisfy the jury of his guilt beyond a reasonable doubt and to a moral certainty. 159 So. at 702.

Having concluded that the Government's cross-examination of Polsinelli's character witnesses was improper, there remains the question of whether such error was prejudicial, or only harmless. Not all error, of course, requires reversal. Fed.R.Crim.P. 52, 28 U.S.C. § 2111 (1976). Where there is error, we must be able to conclude that such error was harmless beyond a reasonable doubt before we can affirm. *Chapman v. California*, 386 U.S. 18, 20–24, 87 S.Ct. 824,

---

5. Cases in which state courts have considered this precise issue, and have reversed, include *Craft v. State*, 254 Miss. 413, 181 So.2d 140 (1965); *Mullins v. State*, 31 Ala.App. 571, 19 So.2d 845 (1944); *Broussard v. State*, 134 Tex. Crim.R. 1, 114 S.W.2d 248 (1938); and *Gaugh*

*v. Commonwealth*, 261 Ky. 91, 87 S.W.2d 94 (1935).

In addition to these cases, there are two brief American Law Report articles on the topic. *See* Annot., 47 A.L.R.2d 1303–06 (1956) and Annot., 71 A.L.R. 1535 (1931).

826–28, 17 L.Ed.2d 705 *rehearing denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). Our study of the somewhat unique facts in the present case leads us to conclude that the present error is not harmless beyond a reasonable doubt.[6]

As indicated, this was, in a sense, a one-on-one situation, *i. e.*, it was the word of the defendant against the word of McFarland, the key Government witness. McFarland, after plea bargaining, pled guilty to one count and his sentencing was deferred until after Polsinelli's trial. He testified that he received from Polsinelli the cocaine which he sold to the undercover drug agent on April 18 and 30. Polsinelli testified that he did *not* deliver cocaine to McFarland. There was no corroborating evidence on this particular point. Other Government witnesses did testify concerning their surveillance of McFarland and Polsinelli, and established that there was contact between the two on both dates. Polsinelli admitted such contacts, and testified that on each occasion McFarland was simply trying to locate Polsinelli's brother, Jerry Polsinelli. Although the surveillance did establish the contacts between McFarland and Polsinelli, the surveillance did not, as we read the record, rule out the possibility that McFarland obtained the cocaine from a source other than the defendant.

The record clearly suggested that the testimony of the character witnesses in the instant case assumed a position of greater importance than would be true in the ordinary case. Polsinelli put his own character in issue by testifying that he had never before even been accused of any criminal misbehavior. He had, for example, done voluntary community work, served honorably in the United States Army Reserve, and was in the restaurant management business.

To bolster his own testimony concerning his character, as well as to establish his innocence, Polsinelli called the three character witnesses, and, as indicated, in this setting their role was more important than might have otherwise been the case. The priest and family friend both testified as to Polsinelli's good community reputation. On cross-examination, Government counsel asked each of the witnesses, in effect, if their assessment of the community reputation would change because Polsinelli had delivered cocaine to McFarland on April 18 and 30, which was, of course, in dispute. Indeed, the question assumed as a fact that Polsinelli was guilty of the very crimes for which a jury had been impaneled to decide his guilt or innocence. The witnesses in each instance stated that such fact would not alter their opinion of Polsinelli's community reputation. Such responses may well have led the jury to conclude that the character witnesses would testify favorably for Polsinelli, no matter what. This could arguably have detracted, and greatly so, from their credibility. We therefore conclude that the error is not harmless beyond a reasonable doubt.

In sum, then, the Government's cross-examination of the defendant's character witnesses was improper, and we are unable to conclude that such error was harmless beyond a reasonable doubt. However, nothing contained herein should be considered as any indication that the Government's cross-examination would have been proper had the character witnesses expressed their personal opinion of Polsinelli's character. That particular matter is not before us.

---

**6.** Our conclusion is supported by the decision of the Supreme Court in *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), which is considered by many commentators to be the leading case in the area of cross-examination of character witnesses. The Court stated in *Michelson*:

> Wide discretion is accompanied by heavy responsibility on trial courts to protect the practice from any misuse. The trial judge was scrupulous to so guard it in the case

before us. He took pains to ascertain, out of presence of the jury, that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation. He satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box. *Id.* at 480–81, 69 S.Ct. at 220–21 (footnote omitted).

Stated differently, we are not here concerned with the situation faced by the Second Circuit in *United States v. Morgan*, discussed *supra*, namely cross-examination of a so-called "expert" character witness who has testified, on direct examination, as to his personal opinion of the defendant's character. In our case the so-called "non-expert" character witnesses only testified as to Polsinelli's community reputation. We have now held that the Government's cross-examination of these "non-expert" character witnesses was improper and, under the circumstances, prejudicial. In thus holding, we do not intend to imply that such cross-examination would have been proper had the character witnesses expressed their personal opinion of Polsinelli's character. Resolution of that particular matter must await a different fact situation.

In view of our disposition of the appeal, the other grounds urged for reversal need not be considered. Whether, on retrial, the same alleged error would reoccur is highly problematical. We do note, however, that Polsinelli's argument that the indictment should have been dismissed for failure to comply with the Speedy Trial Act is not valid.

Judgment reversed and case remanded, further proceedings to be consonant with the views herein expressed.

BARRETT, Circuit Judge, concurring in the result:

I concur in the result because I conclude, as does the panel opinion, that it is prejudicial error for the prosecution, in the course of cross-examination of defense character witnesses, to inquire of their opinion of the defendant's reputation based on an assumption of his guilt to the charges for which he is then on trial. Such a predicate truly places the witnesses in an untenable predicament. Obviously, the witnesses would not be present unless they had close personal feelings for the defendant. I would go further and suggest that they would not be present if they truly believed that the defendant was guilty, or, perhaps more fairly, if they believed that he was in fact guilty

but should not suffer punishment because of his past good record and reputation. That is why it is so difficult to cross-examine such character witnesses. It is difficult to assess the impact of their testimony on the jurors. Certainly, their testimony carries considerable weight in terms of sympathy and compassion which may in some instances result in a not guilty verdict out of fear of a court sentence if the verdict were returned otherwise.

I cannot attribute any significant distinction between the testimony given by the priest and family friend of Polsinelli in the sense of "community reputation" for "honesty, truthfulness, veracity and integrity" on the one hand and their "personal" opinion of his character, on the other hand. In truth, they are one and the same. Thus, it is a matter of serious concern to me whether the evidence is proper in the context of the inquiry of the guilt or innocence of a defendant to a specific criminal charge for which he stands trial.