**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gary WILLIAMS, Defendant-Appellant.**

**No. 83–1877.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1984.

Decided June 18, 1984.

---

**3.** Appellant in his brief on appeal quotes from the dissenting opinion in *McCray,* —— U.S. at

——, 103 S.Ct. at 2443.

George P. Lynch, George P. Lynch, Ltd., Chicago, Ill., for defendant-appellant.

Gillum Ferguson, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and WOOD and POSNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Appellant Gary Williams appeals his conviction on three counts of mail fraud. He raises constitutional arguments concerning the government's long delay before indicting him, the conduct of cross-examination, the labeling of certain testimony as hearsay, and the treatment of certain evidence. Although we have some concerns about the government's handling of this case, we affirm.

## I.

Appellant, an attorney, was indicted and convicted along with a co-defendant, Charles Vervlied, on mail fraud charges for participating in a scheme to defraud an insurance company. The undisputed evidence showed that Vervlied sold appellant's car to an undercover federal agent, Robert Ford, for $800 in September of 1978. Vervlied also sold four or five other cars to agent Ford, who testified that he understood from Vervlied that these were "insurance jobs"; Vervlied conceded that he had called them "insurance cars." Several days after his car was in the government's hands, appellant reported to police that his car had just been stolen from an Orland Park department store parking lot. Appellant also reported the car as stolen to his insurance company, which mailed appellant a check to pay off the lienholder and $7680 for the remaining value of the car.

The government contended at trial that appellant and Vervlied had agreed that appellant would transfer his car to Vervlied, who then would sell it, while appellant would report the car as stolen and collect the insurance proceeds. Appellant did not testify. Through Vervlied's testimony, appellant tried to establish that Vervlied, part owner of an automobile repair shop, and his friend Bob "Whiskey Bob" Berrant (or Berent), an automobile mechanic who worked out of his home, carried out a scheme of which appellant was merely a victim. Vervlied testified that he did not know appellant at the time appellant's car was transferred to the government agent, and that he and Berrant had agreed that Berrant would steal his customers' cars and transfer the cars to Vervlied, who would fence them. Appellant claims he brought his car to Berrant for repairs, and Berrant stole it from him for resale through Vervlied.

Appellant concedes that he lied about the circumstances surrounding the theft of his car in his report to the Orland Park police. He claims that Berrant notified him that his car was stolen from the parking lot several days after Berrant transferred his car to Vervlied, to allow Vervlied time to dispose of the car. Appellant explains that he reported that the car was stolen from his possession rather than Berrant's in order to recover insurance proceeds for the car, because Berrant carried no theft insurance.

Vervlied sold appellant's car to the FBI agent on September 8, 1978. Nearly four years later, in August of 1982, the case was presented to a grand jury which returned a four-count indictment on August 9, 1982. In the meantime, the government had released appellant's car to the titleholder, the insurance company, on April 2, 1979, and "Whiskey Bob" Berrant had died on June 15, 1981. The joint trial of appellant and Vervlied commenced on March 15, 1983. Appellant and Vervlied were convicted on three counts each. At the sentencing, the judge noted that the crime had occurred five years earlier and sentenced both to four years probation and restitution.

## II.

Appellant argues that the four-year delay between the occurrence and his indictment violated his fifth amendment right to due process of law and his sixth amendment right to a speedy trial. He claims

actual and substantial prejudice to his defense due to the death of Bob Berrant and the government's release of his car to the insurance company, depriving him of his right to present evidence and confront the evidence against him. The government responds that neither of these factors substantially prejudiced appellant's case.

Appellant does not allege that the delay was intentionally caused by the government in an attempt to gain tactical advantage over him. Rather, appellant argues that the "immeasurable grievousness" of the prejudice must outweigh the government's reasons, albeit not tactical, for delay. The government explains that the delay was a "regrettable" oversight caused by case overload and administrative error. Apparently there was no continuing investigation over the four-year pre-indictment period. Rather, the case file sat untouched on the desk of one assistant United States attorney or another while the assistants pursued other trials and investigations and even while one was married and went on a honeymoon.

■■■ This is not a case of post-indictment, pre-trial delay; rather, it is a case of pre-indictment delay. Therefore, the sixth amendment right to a speedy trial and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1982), are not directly applicable. The statute of limitations, the primary source of repose and protection from prosecutions based on stale evidence, had not yet run when appellant was indicted. *See* 18 U.S.C. § 3282 (1982) (five year statute of limitations). The Supreme Court, however,

has held that the due process clause of the fifth amendment provides some protection against pre-indictment delay that has caused such substantial prejudice to the defendant as to outweigh the government's reasons for delay. *See United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *see also United States v. Gouveia,* — U.S. —, —, 104 S.Ct. 2292, 2300, 81 L.Ed.2d 146 (1984). The Supreme Court did not establish a strict rule requiring dismissal of an indictment under specific circumstances, but left to the lower courts the "delicate judgment based on the circumstances of each case." *Marion,* 404 U.S. at 325, 92 S.Ct. at 466.

This court on occasion has tried to establish a formula for striking the delicate balance between prejudice to the defendant and the cause of delay. Two lines of cases have emerged; both require the defendant to prove actual and substantial prejudice resulting from the delay, but they treat the reasons for delay differently in the balancing process.[1] We need not resolve the two lines of cases at this time because we hold that appellant has not met his burden of showing actual and substantial prejudice to his defense, a threshold requirement under either line of cases.[2]

■■ The question of prejudice to appellant's defense due to the death of Berrant is inextricably related to whose version of events is believed. Either, as Vervlied testified and appellant contends, Berrant was

---

1. In one line of cases, we have held that once the defendant has shown prejudice, we then would proceed to balance the prejudice against the government's reasons for delay, placing on the government the burden of showing the delay was necessary. *See United States v. Solomon,* 688 F.2d 1171, 1179 (7th Cir.1982); *United States v. King,* 593 F.2d 269, 272 (7th Cir.1979). In the other line, we have indicated that the defendant must allege and prove both prejudice and the government's intentional delay. *See, e.g., United States v. Watkins,* 709 F.2d 475, 479 (7th Cir.1983).

2. We are loath to impose judicial review on prosecutorial decisions such as the priority of cases for prosecution, yet we note that our balancing is a place of last resort for defendants whose cases have fallen between the prosecutorial cracks. An unintentional delay may work to the disadvantage of the government as well as the defendant, but the government can choose not to prosecute the case. The due process clause should provide the defendant with a similar escape, but only where the balance of prejudice to the defendant against the reasons for delay, although unintentional, is so detrimental to the defendant's case as to be patently unfair. The actual prejudice to the defendant, however, must be so substantial as to outweigh the preferable deference to legitimate prosecutorial priorities and bureaucratic realities.

Vervlied's partner in crime and appellant was their innocent victim, or, as the government urges, Berrant is a conveniently unavailable scapegoat around whom appellant and Vervlied have fabricated a story to exculpate themselves from federal mail fraud charges.[3]

We can look only to peripheral factors for guidance as to what role Berrant would have played in this prosecution and trial. Appellant curiously failed to offer other evidence linking Berrant to his version of events, such as evidence that appellant ever took his car to Berrant for repairs or even knew Berrant. Further, appellant did not mention Berrant in his motion to sever or in his first motion to dismiss for pre-indictment delay; it appears that appellant first mentioned Berrant in his second motion to dismiss, filed one day before trial. We do not know if the government was aware of Berrant prior to that date; at oral argument, counsel for the government said he did not know whether the government had interviewed Berrant before he died. Even if we accepted appellant's version of events, Berrant's death and consequent inability to testify on appellant's behalf would have prejudiced appellant's case only if we are convinced that Berrant would have testified, that his testimony would have withstood cross-examination, and that the jury would have found Berrant a credible witness despite his apparently well-earned nickname. In the absence of other evidence tending to support these possibilities, we would merely be piling speculation upon speculation to reach a finding of actual and substantial prejudice here, and this we cannot do.

Appellant also argues prejudice in the government's release of his car to the insurance company, because appellant could not examine it for repairs or identify it as his car. The government, however, retained and offered for appellant's inspection photographs of the car, the license plates from the car, and tape lifts of the vehicle identification numbers on the engine and transmission. Appellant does not indicate what else he would have wanted to see. Further, appellant has not indicated any effort to locate the car through the insurance company. In any event, the unavailability of the car, even if prejudicial, would not amount to substantial prejudice in this case.

Due to appellant's belated mention of Berrant and his failure to offer any evidence beyond Vervlied's testimony linking Berrant to the transfer of his car, we are not persuaded that his defense suffered actual and substantial prejudice from delay. Appellant's due process rights were not violated by this pre-indictment delay.

### III.

■ Appellant claims a due process violation in the government's cross-examination of his character witnesses,[4] who were asked over defense counsel's imprecise objections[5] whether their favorable testimony would change if it should be shown that appellant committed the acts for which he was on trial. On cross-examination, two reputation witnesses,[6] Pisani and Steczo

---

3. Appellant's version of events as testified to by Vervlied would have exposed Vervlied and Berrant, if Berrant were still alive, to state theft charges. However, long before the time of trial, the state statute of limitations had run. *See* Ill.Rev.Stat. ch. 38, § 3–5 (1983) (three years).

4. A defendant may offer witnesses to a pertinent trait of his character in a case where character is not an element of the crime charged. Fed.R. Evid. 404(a)(1). Traditionally a witness testifies to the fact of, or his belief or opinion of, defendant's reputation in the community as to that character trait (a reputation witness). More recently, Rule 405(a) of the Federal Rules of Evidence also permits a witness to testify to his own opinion, not that of the community, of defendant's character trait (an opinion witness).

5. At oral argument, the government indicated that it relied on its argument that the cross-examination was proper, rather than on its argument that appellant waived this issue on appeal by failing to object properly below.

6. On cross-examination of a reputation witness, the prosecution may ask, to test the breadth of the witness's knowledge, if he has heard of specific instances of defendant's conduct for which the prosecution has a good faith basis. *See* Fed.R.Evid. 405(a); *Michelson v. United States,* 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93

(Steczo was asked his opinion as to appellant's character, but responded by giving his opinion as to appellant's reputation), and three opinion witnesses,[7] Rowlee, R. Jesk, and J. Jesk, were asked questions such as, "if you assume that it could be proven" and "if it were true" that Mr. Williams gave false information to the insurance company and to police, would that change your opinion as to his truthfulness and honesty? All the witnesses answered no to these cross-examination questions.

The cross-examination of appellant's character witnesses was neither an inquiry into specific instances testing the witnesses' knowledge nor exposure of the witnesses' bias as contemplated by the Federal Rules. *See supra* notes 6 & 7. The questioning allowed the prosecution to foist its theory of the case repeatedly on the jury and to force an unsuspecting witness to speculate on the effect of a possible conviction. Other courts have held that this line of questioning is error because it assumes away the presumption of innocence. *See United States v. Polsinelli*, 649 F.2d 793 (10th Cir.1981) (reputation witnesses; reversible error);[8] *United States v. Candelaria-Gonzalez*, 547 F.2d 291 (5th Cir.1977) (reputation witnesses; reversible error in conjunction with court's general bias against defendant);[9] *see also United States v. Morgan*, 554 F.2d 31, 34 (2d Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977) (allowing conclusory

cross-examination of expert character witness, but, in dictum, disapproving similar questioning of a non-expert character witness).[10] We hold that permitting this line of cross-examination over objection was error, and we see no reason to treat reputation and opinion witnesses differently in this regard, *see Polsinelli*, 649 F.2d at 799 (Barrett, J., concurring).

We find, however, that these cross-examination questions, while error, were not reversible error in this case. This case did not come down to a swearing contest between appellant and a key prosecution witness which could be resolved only by assessing relative credibility, *see, e.g., Polsinelli*, 649 F.2d at 798, but rather presented a choice between the government's theory primarily based on objective evidence and appellant's theory supported solely by the testimony of his co-defendant, whose credibility the jury was free to assess. We believe the divergence in methods of proof rather than the cross-examination technique accounted for the jury verdict, and the error was harmless under the facts of this case.

## IV.

■ Appellant claims a due process violation in the characterization of Berrant's alleged out-of-court statements as hearsay subject to a limiting instruction that prevented jury consideration of the statements

---

L.Ed. 168 (1948). The witness also may be asked about his relationship to the defendant to expose possible bias. The prosecution perhaps may ask a reputation witness his personal opinion of the defendant's character, and, at common law, whether he would believe the defendant under oath. *See* C. Wright & K. Graham, 22 *Federal Practice and Procedure* § 5264, at 583–84; § 5265, at 586–87 (1978).

7. On cross-examination, an opinion witness may be asked if he knows or has heard of specific instances of conduct, and, at common law, whether the witness believes the defendant could have done the act in question. Opinion witnesses also may be questioned about their relationship to the defendant. *See id.* § 5265, at 586–87.

8. The Tenth Circuit has since held that objection to this cross-examination technique could be waived. Reversal as plain error was not re-

quired where such questioning was permitted but abundant evidence of guilt existed on the record as a whole. *See United States v. Primrose*, 718 F.2d 1484 (10th Cir.1983).

9. The Fifth Circuit has since held that this line of questioning is not plain error. *See United States v. Palmere*, 578 F.2d 105 (5th Cir.1978) (per curiam), *cert. denied*, 439 U.S. 1118, 99 S.Ct. 1026, 59 L.Ed.2d 77 (1979).

10. We disagree with the government's suggestion that this remark in *Morgan* was not well-reasoned. We also reject the government's argument that potential use of an instruction on the weight to be given character evidence necessitated the unfair and potentially prejudicial cross-examination.

for the truth of the matter asserted.[11] Appellant first argues that Vervlied's testimony explained the "modus operandi" of the car theft ring primarily by describing nonverbal acts, and Berrant's declarations should be characterized as part of that nonhearsay testimony. Vervlied's occasional references to acts rather than speech, however, did not suffice to take his testimony as to Berrant's alleged declarations out of the realm of hearsay.

We hold that Berrant's declarations do not fall within the hearsay exception for a statement against interest made by an unavailable declarant, *see* Fed.R.Evid. 804(b)(3), and that the trial court did not abuse its discretion in denominating these statements as hearsay and giving the jury a limiting instruction. *See United States v. MacDonald*, 688 F.2d 224, 233 (4th Cir. 1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983) (abuse of discretion standard of review). When a defendant offers as exculpatory evidence a statement tending to expose the declarant to criminal liability, Rule 804(b)(3) excludes that statement as hearsay unless the corroborating circumstances clearly indicate the trustworthiness of the statement. *See United States v. Silverstein*, 732 F.2d 1338 (7th Cir.1984). Berrant's declarations may fail even to qualify for this exception, because while Berrant's statements may have tended to expose him to state theft charges, they would have exculpated him from more serious mail fraud charges. *See United States v. Evans*, 635 F.2d 1124, 1125–26 (4th Cir.1980), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3090, 69 L.Ed.2d 958 (1981). Further, the circumstances do not clearly corroborate Berrant's alleged statements to Vervlied. Agent Ford understood from Vervlied that the cars were not stolen but were "insurance jobs"; Ford had never heard of Berrant. Appellant did not present any evidence that he knew or had any contact with Berrant. Vervlied testified that he would not steal cars from his customers because it would be bad for his repair business, but did not explain why Berrant would not also have found such thefts bad for his repair business. Instructing the jury to limit its consideration of this testimony was within the trial court's discretion.

## V.

Appellant finally urges constitutional error in the "suppression" of evidence about the other vehicles sold by Vervlied to agent Ford and in the admission of the Orland Park police report, in which appellant admittedly made false statements.

In his amended motion for discovery, appellant sought from the government "police reports and other evidence" relating to the four or five other cars that Vervlied sold to agent Ford. The government did not produce the reports, maintaining that it had turned over all evidence favorable to appellant as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). During the trial, appellant's counsel did have an opportunity to see the names and addresses of these car owners. Even assuming *arguendo* that the reports were material and favorable to appellant, our standard of review limits us to determining whether the government's disclosure came so late as to prevent appellant from receiving a fair trial. *See United States v. Sweeney*, 688 F.2d 1131, 1141 (7th Cir.1982); *United States v. McPartlin*, 595 F.2d 1321, 1346 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). We cannot say that disclosure came too late in this case. After appellant's counsel viewed the reports at trial, he could have asked for a continuance to contact the other owners and call them to testify, or he could have asked the court to make the reports part of the record. Appellant's speculation that the reports would "establish his innocence" by showing that the other car owners also reported their cars as stolen is too much to

---

**11.** These statements were placed before the jury repeatedly: in Vervlied's direct examination by his attorney, in appellant's counsel's cross-examination of Vervlied, in appellant's counsel's closing argument, and as the basis for an instruction on appellant's theory of the case.

swallow in light of appellant's failure to pursue his theory when given the opportunity to do so. Further, the trial court was within its discretion in limiting defense counsel's arguments concerning the other car owners.

As for admission of the Orland Park police report, appellant apparently became aware somewhat belatedly that the police report contained on its face a statement that making a false report to police is a crime. It is unclear whether this portion of the report went to the jury for its examination, but in any event appellant waived the matter by failing to object at the time. We do not believe the jury could have been confused into thinking appellant was charged with lying to police rather than mail fraud, and the police report was a vital part of the government's mail fraud theory.

### VI.

We affirm appellant's conviction.